EL PARTIDO UNIÓN REPUBLICANA y EL PARTIDO SOCIALISTA DE PUERTO RICO; y LEOPOLDO FIGUEROA y BOLÍVAR PAGÁN, en sus caracteres de miembros de la JUNTA INSULAR DE ELECCIONES en representación de los Partidos Unión Republicana y Socialista, respectivamente, demandantes y apelantes, *v.* CHARLES H. TERRY, Presidente de la Junta Insular de Elecciones; y El PARTIDO LIBERAL PUERTORRIQUEÑO, y FRANK MARTÍNEZ, en su carácter de miembro de la Junta Insular de Elecciones en representación del Partido Liberal Puertorriqueño, demandados y apelados.

No. 7218.—*Sometido:* Diciembre 21, 1935. *Resuelto:* Diciembre 23, 1935.

278

*Bolívar Pagán,* abogado de los apelantes; *Samuel R. Quiñones, Pedro M. Porrata, Angel M. Villamil, F. M. Susoni, Jr. y Félix Ochoteco, Jr.,* abogados de los apelados Partido Liberal Puertorriqueño y del Sr. Frank A. Martínez.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

La sección 29 de la "Ley de Inscripciones y Elecciones" (Leyes de 1919, núm. 79, págs. 531–551) dispone que: "El término para la exclusión de electores, de las listas electorales, estará comprendido desde el primero de enero hasta el treinta y uno de julio del año en que hubiere de celebrarse elecciones." La transcripción de autos en este caso fué radicada el 12 de diciembre. El alegato de los apelantes se presentó el día 15. Ambas partes solicitaron una vista rápida con el objeto de que este caso fuese decidido antes de que expirara el presente término. La causa fué señalada para vista y discutida el 19 de diciembre. El alegato de los apelados fué radicado el día 21 de diciembre. Hoy es el último día del término. El tiempo es demasiado corto para que seamos breves en la exposición de los hechos o para que elaboremos las razones que tenemos para llegar a nuestras conclusiones.

Un procurador general saliente le escribió al Superintendente de Elecciones el 22 de agosto de 1935, de la siguiente manera:

"Señor:
"Acuso recibo de su comunicación del 7 de agosto de 1935, solicitando mi opinión en cuanto a si los miembros de la Junta Insular de Elecciones que representan a los partidos principales coligados tienen derecho a un voto o a medio voto en las deliberaciones y decisiones de dicha Junta. Sobre esta cuestión llama usted mi atención hacia las disposiciones de la Ley Electoral contenidas en las Secciones 1, 13 y 36, según han sido enmendadas por las leyes número 5 de 2 de abril de 1934 y 3 de 6 de julio de 1932.
"De acuerdo con la ley número 5 de 2 de abril de 1934, la Junta Insular de Elecciones se compone del Superintendente General de Elecciones y de tres personas representando los tres partidos políti-

cos principales de Puerto Rico, y de un observador por cada partido político que inscribiere candidatos por petición en las tres cuartas partes o más de los precintos electorales de toda la Isla y en un diez por ciento más del voto total depositado para todos los candidatos para el cargo de Comisionado Residente de Puerto Rico a los Estados Unidos en las últimas elecciones precedentes. Los primeros tendrán derecho a voz y voto, y el segundo a voz pero no voto, en las deliberaciones y decisiones de la Junta.

"Por la sección 13, enmendada por esa misma ley, se da igual representación en las juntas locales de elecciones de cada precinto electoral. Por la sección 36 de la Ley Electoral, según fué enmendada por la ley número 3 de 6 de julio de 1932, se dispone que un candidato podrá figurar en dos o más candidaturas que se hubieren de votar en las elecciones generales, limitándose el derecho del elector a votar una sola candidatura general, y disponiéndose que del resultado de esa elección se determinarán los derechos de los partidos que así han llevado un candidato repetido a Comisionado a Washington, en el sentido de considerar como partido principal el que hubiere recibido el mayor número de votos, y asignándole a los otros partidos que en esa forma llevaron un candidato repetido a Comisionado a Washington el derecho que hubiere adquirido, de acuerdo con el resultado de la elección y el orden establecido en la sección 14 de la ley.

"Hace referencia esa disposición contenida en la sección 36, supra, a lo que dispone la sección 14 que fué enmendada también por esa misma ley, en el sentido de que solamente se considerarán como partidos principales a los dos partidos políticos cuyos candidatos para Comisionado a los Estados Unidos obtuvieron el mayor número de votos en primer y segundo término, considerándose como partido de la mayoría el que obtuvo el primer lugar en el número de votos.

"Esa sección fué luego enmendada por la ley número 5 de 2 de abril de 1934, en el sentido de determinar por partidos principales a los tres partidos políticos cuyos candidatos para Comisionado Residente obtuvieron el mayor número de votos en la columna de candidaturas generales de los respectivos partidos depositados en las últimas precedentes elecciones.

"Así pues, tenemos que de acuerdo con esta última sección de la Ley Electoral deben y tienen que existir tres partidos políticos principales, o sea aquellos que en las últimas elecciones obtuvieron el mayor número de votos en la columna de candidaturas generales de los respectivos partidos, siendo ésta una cuestión de hecho que consta en los records de esa Junta Insular y la que puede así determinarlo.

"En la sección 36 hay un disponiéndose que dice:

" 'Disponiéndose, sin embargo, que si los dos partidos principales se combinaren en cualquier forma, bien fusionándose o postulando el mismo candidato para Comisionado Residente en Washington, o nominando los mismos candidatos en una mayoría de los distritos senatoriales o representativos de la Isla, entonces los observadores nombrados de acuerdo con las secciones 1, 13 y 47 por petición en toda la Isla a base del diez por ciento o más del voto total emitido para Comisionado Residente a los Estados Unidos en las últimas elecciones precedentes, tendrán voz y voto en las deliberaciones y decisiones de la Junta Insular y juntas locales de elecciones, y tendrán en todo respecto los mismos derechos y obligaciones que se estipulan para los representantes de los partidos principales: Y disponiéndose, finalmente, que cualquier empate en la votación en cualquier junta local de elecciones, constituirá ipso facto una apelación para ante la Junta Insular de Elecciones, del asunto objeto de empate y todo empate en la votación en la Junta Insular de Elecciones será decidido por el Gobernador de Puerto Rico.'

"El disponiéndose que acabo de copiar tuvo efecto y aplicación para las elecciones del año 1932, ya que para esa fecha hubo una combinación de dos partidos principales con una misma candidatura general y postulando el mismo candidato para Comisionado Residente en Washington; y el resultado de esas elecciones, en cuanto a los partidos políticos se refiere, comprende la definición que de los mismos se hace por la sección 14, en la forma y manera como quedó enmendada esa sección por la ley número 5 de 2 de abril de 1934.

"Para armonizar la disposición contenida en esa sección en la forma y manera como ha sido enmendada, por esa misma ley se enmendó la sección 13. Por la sección 14, como ya he dicho, se aumentó el número de partidos políticos principales a tres, o sean los que en las elecciones de 1932 y como resultado de las mismas, obtuvieron en primer, segundo y tercer término el mayor número de votos en la columna de candi.aturas generales, o sea que hoy y desde el día en que empezó a regir esa ley, tanto los partidos que se coligaron como los que no lo hicieron en las elecciones de 1932, se han de considerar y hasta un número de tres, para por el número total de votos obtenidos en la columna de candidaturas generales se les clasifique como los tres partidos políticos principales en el orden correlativo al número de votos obtenidos.

"Así, pues, tenemos que hoy y a los fines de ley no existen partidos coligados y sí tres partidos políticos principales.

"Ahora bien, en la sección 13, según quedó enmendada por esta ley, hay lo siguiente:

" 'Cuando dos partidos principales se coligaren para unas elecciones generales, radicando en las oficinas del Secretario Ejecutivo ambas candidaturas generales con candidatos comunes en treinta o más precintos de la Isla, entonces cada miembro de los partidos coligados disfrutará de medio voto en las decisiones de las juntas electorales.

" 'Si asimismo se coligaren los tres partidos principales, entonces cada miembro de los partidos coligados disfrutará de un tercio de voto en las elecciones de las juntas electorales; y entonces, o sea, cuando los tres partidos principales se coligaren, el observador del primer partido por petición que se inscribiere en las próximas y subsiguientes elecciones de acuerdo con las disposiciones de la presente ley tendrá voz y voto en las decisiones de las juntas electorales.'

"Estos dos párrafos de la referida sección 13 tienen aplicación prospectiva únicamente.

"En el caso en que surjan cualesquiera de las circunstancias a que los mismos se refieren, serían de inmediata aplicación las disposiciones que contienen en cuanto al derecho al voto de cada miembro de los partidos que así se coligaren, siendo factible no sólo la coalición de dos partidos principales, si que también del total de los mismos, o sean los tres partidos principales que reconoce la ley.

"El disponiéndose de la sección 36 y los párrafos que copio antes aparentemente están en conflicto, esto es, las disposiciones de la sección 13 parece como que destruyen el referido disponiéndose, pero esa conclusión no es la verdadera.

"Es un hecho cierto que los dos partidos principales que tienen representación en esa Junta se coligaron o combinaron en la forma como dispone la sección 36 para las elecciones de 1932, y también es cierto que al enmendarse la sección 14 por la ley número 5 de 2 de abril de 1934, se consideró el resultado de esas elecciones para clasificar a los partidos políticos principales, y hasta tanto por el resultado de estas elecciones no se cambie la naturaleza de los mismos a los fines de la composición de esa Junta, se entiende que los dos partidos políticos principales que existían en las elecciones de 1932, continúan combinados y así también continúa siendo partido organizado el que lo fué para aquellas elecciones y tiene en la Junta Insular de Elecciones la representación que determina el disponiéndose de la sección 36, o sea un observador con voz y voto, y cualquier empate en la votación ha de resolverse en la forma y manera como se dispone en la referida sección.

"Si antes del día de las elecciones del año 1936, o sea después del 10 de septiembre, a las doce del día, surgen las circunstancias a que se refieren los párrafos de la sección 13 que antes copio, entonces y desde ese momento es que los representantes de los partidos principales en las juntas electorales pasarán a tener voz y voto en la forma y manera como lo establecen los referidos párrafos, esto es, si la coalición es de dos partidos principales sus representantes tendrán medio voto, y si la coalición es de tres partidos principales sus representantes tendrán un tercio de voto en las decisiones de todas las juntas electorales.

"En consideración a las anteriores explicaciones, soy de opinión que actualmente los miembros que componen la Junta Insular de Elecciones han de continuar y continúan con los derechos del disponiéndose de la sección 36, o sea que aún cuando hubo una coalición para las elecciones de 1932, sus representantes continúan con derecho a un voto en las deliberaciones y decisiones de la Junta, teniendo igual derecho el observador del partido organizado o el partido por petición que en aquellas elecciones así figuró y dependiendo el voto de los representantes de los nuevos partidos principales de la acción que éstos tomen hasta el día 10 de septiembre del año de las elecciones."

Otro procurador general, de reciente nombramiento, escribió al mismo Superintendente de Elecciones, el 30 de septiembre, lo que sigue:

"Señor:

"Por carta de fecha 11 de septiembre de este año el Sr. Frank A. Martínez, miembro de esa Junta solicita de mí revise la opinión de esta oficina de agosto 22 del corriente año, dirigida a usted, en la que se interpretaron ciertas disposicones de la Ley Electoral y se resolvió que los miembros de la Junta Insular de Elecciones que representan a los partidos principales coligados tienen derecho a un voto en sus deliberaciones y decisiones. Habiendo leído cuidadosamente dicha opinión y habiendo notado que la misma es contradictoria entre sí, entiendo que es mi deber y está dentro de mis facultades revisarla, lo que paso a hacer por medio de la presente.

"Con su carta antes mencionada, el señor Martínez acompaña una certificación expedida por el Secretario Ejecutivo de Puerto Rico, en la que este funcionario hace constar que el Partido Unión Republicana y el Partido Socialista radicaron ambos en su oficina candidaturas generales con candidatos comunes en más de treinta precintos electorales para las elecciones que se celebraron en esta Isla el día 8 de noviembre de 1932.

"En la opinión de esta oficina a que me he referido anteriormente se dijo lo siguiente:

" 'Para armonizar la disposición contenida en esa sección (se refiere a la Sección 14) en la forma y manera como ha sido enmendada, por esa misma ley (se refiere a la Ley Electoral de 1919) se enmendó la sección 13.

" 'Por la Sección 14, como ya he dicho, se aumentó el número de partidos políticos principales a tres, o sean los que en las elecciones de 1932 y como resultado de las mismas, obtuvieron en primer, segundo y tercer término el mayor número de votos en la columna de candidaturas generales, o sea que hoy y desde el día en que empezó a regir esa ley, tanto los partidos que se coligaron como los que no lo hicieron en las elecciones de 1932, se han de considerar y hasta un número de tres, para por el número total de votos obtenidos en la columna de candidaturas generales se les clasifique como los tres partidos políticos principales en el orden correlativo al número de votos obtenidos.

" 'Así, pues, tenemos que hoy y a los fines de ley no existen partidos coligados y sí tres partidos políticos principales.

" ' '* * * * * * *

" 'Estos dos párrafos de la referida sección 13 tienen aplicación prospectiva únicamente.

" 'En el caso en que surjan cualesquiera de las circunstancias a que los mismos se refieren, serían de inmediata aplicación las disposiciones que contiene en cuanto al derecho al voto, de cada miembro de los partidos que así se coligaren, siendo factible no sólo la coalición de dos partidos principales, si que también del total de los mismos, o sean los tres partidos principales que reconoce la ley.

"El disponiéndose de la Sección 36 y los párrafos que copio antes aparentemente están en conflicto, esto es, las disposiciones de la Sección 13 parece como que destruyen el referido disponiéndose, pero esa conclusión no es la verdadera.

" ' Es un hecho cierto que dos de los partidos pricipales que tienen representación en esa Junta se coligaron o combinaron en la forma como dispone la Sección 36 para las elecciones de 1932, y también es cierto que al enmendarse la sección 14 por la Ley No. 5 de 2 de abril de 1934, se consideró el resultado de esas elecciones para clasificar a los partidos políticos principales y hasta tanto por el resultado de estas elecciones (supongo que se referirá a las elecciones de 1936) no se cambie la naturaleza de los mismos a los fines de la composición de esa junta, se entiende que los dos partidos políticos principales que existían en las elecciones de 1932, continúan combinados y así

también continúan siendo partido organizado el que lo fué para aquellas elecciones y tiene en la Junta Insular de Elecciones la representación que determina el disponiéndose de la sección 36, o sea un observador con voz y voto, y cualquier empate en la votación ha de resolverse en la forma y manera como se dispone en la referida sección.

" 'Si antes del día de las elecciones del año 1936, o sea después del 10 de septiembre a las doce del día, surjen las circunstancias a que se refieren los párrafos de la Sección 13 que antes copio, entonces y desde ese momento es que los representantes de los partidos principales en las juntas electorales pasarán a tener voz y voto en la forma y manera como lo establecen los referidos párrafos, esto es, si la coalición es de dos partidos principales sus representantes tendrán medio voto, y si la coalición es de tres partidos principales sus representantes tendrán un tercio de voto en las decisiones de todas las juntas electorales. En consideración a las anteriores explicaciones, soy de opinión que actualmente los miembros que componen la Junta Insular de Elecciones han de continuar y continúan con los derechos del disponiéndose de la Sección 36, o sea que aun cuando hubo una coalición para las elecciones de 1932, sus representantes continúan con derecho a un voto en las deliberaciones y decisiones de la Junta teniendo igual derecho el observador del partido organizado o el partido por petición que en aquellas elecciones así figuró, y dependiendo el voto de los representantes de los nuevos partidos principales de la acción que éstos tomen hasta el día 10 de septiembre del año de las elecciones.'

"Para una mejor comprensión de lo que luego vamos a decir, creo necesario copiar antes las disposiciones de la vigente Ley Electoral (Ley No. 79 de 23 de julio de 1919, subsiguientemente enmendada) que a mi juicio son aplicables a la cuestión en controversia. Entre otras, son de rigurosa aplicación al punto que se discute las secciones que se copian a continuación, algunas 'ad pedem literae' y otras en lo pertinente solamente, a saber:

" 'Sección 1.—Esta Ley se conocerá por el nombre de "Ley Electoral".

" 'Se establece una Junta Insular de Elecciones, que se compondrá de un Superintendente General de Elecciones, como presidente, quien será designado por el Gobernador, con el concurso y consentimiento del Senado de Puerto Rico, y de tres personas representando los tres partidos políticos principales de Puerto Rico, según más adelante se definen en la presente, y de un sustituto de cada uno de dichos miembros, quienes serán nombrados por el Gobernador a peti-

ción de los organismos directivos centrales de dichos partidos; *Disponiéndose,* que el organismo directivo central de cualquier partido político que en las próximas y subsiguientes elecciones inscribiere candidatos por petición en las tres cuartas partes o más de los precintos electorales de toda la Isla y en un diez (10) por ciento o más del voto total depositado para todos los candidatos para el cargo de Comisionado Residente de Puerto Rico a los Estados Unidos en las últimas elecciones precedentes, tendrá el derecho de nombrar un representante y un sustituto que será designado con el nombre de ''observador'' y quien distrifrutará de todos los privilegios y derechos de los miembros de dicha junta, y tendrá voz pero no voto en sus deliberaciones y decisiones.

'' '. . . Dicha Junta podrá nombrar su personal subalterno y empleados, y podrá determinar y fijar su remuneración dentro de la asignación que con tal objeto se hiciere por ley.'

''De acuerdo con esta sección, tal como regía para las elecciones de 1932 (véase la Ley No. 3 de 6 de julio de 1932), la Junta Insular de Elecciones estaba compuesta del Superintendente General de Elecciones y de dos personas representando a los dos partidos políticos principales de la Isla y de un sustituto de cada uno de dichos representantes, así como de observadores y sus sustitutos que nombrase cualquier partido político cuyo candidato para Comisionado a Washington hubiera obtenido 10% o más del total de votos depositados en las urnas para aquel cargo en las últimas elecciones precedentes, y por el organismo directivo central de cualquier partido que hubiera inscrito candidato por petición para toda la Isla en un 10% o más del voto total depositado para candidatos para cualquier cargo en las últimas elecciones precedentes.

'' 'Sección 13.—(Enmendada por Ley No. 5 del 2 de abril de 1934).—En cada precinto electoral habrá una junta local de elecciones, la cual desempeñará los deberes que por ley se prescriben, más aquellos que legalmente les señalare la Junta Insular de Elecciones. Cada una de dichas juntas locales se compondrá del juez municipal del municipio al cual perteneciere, como presidente, y de tres miembros más, y de miembros *pro tempore* quienes actuarán como sustitutos en caso de ausencia de los miembros propietarios, y estos miembros propietarios y *pro tempore* serán nombrados por los organismos directivos centrales de los tres partidos políticos principales de Puerto Rico, según más adelante se definen, con la aprobación de la Junta Insular de Elecciones; *Disponiéndose,* que el organismo central directivo de cualquier partido político que en las próximas y subsiguientes elecciones inscribiere candidatos por petición en las tres

cuartas partes o más de los precintos electorales de toda la Isla y en un diez por ciento o más del voto total depositado en las urnas para todos los candidatos para aquel cargo en las últimas elecciones precedentes, tendrá el derecho de nombrar un representante y su sustituto en cada una de dichas juntas, que será conocido por el nombre de observador, quien disfrutará de todos los derechos y privilegios de miembros de las citadas juntas locales y tendrá voz pero no voto en sus deliberaciones y decisiones.

'' 'En los municipios donde no hubiere corte municipal, el juez de paz será miembro y presidente de la junta local de elecciones; *Disponiéndose,* que en la Capital y en el municipio de Ponce, cada uno de los cuales tiene dos precintos, los funcionarios de las cortes quienes asumirán las funciones como miembros presidentes de la junta local de elecciones de los precintos electorales de dicha Capital y dicho municipio de Ponce, serán los siguientes: primer precinto de la Capital, el juez de la primera sección de la corte municipal de la Capital; segundo precinto de la Capital, el juez de la segunda sección de la corte municipal de la capital; primer precinto de Ponce, el juez de la corte municipal del municipio de Ponce; y segundo precinto de Ponce, el juez de paz del municipio de Ponce; *Y, disponiéndose, además,* que en el municipio de Utuado, el cual tiene también dos precintos electorales la junta local de elecciones del primer precinto será también la junta local de elecciones del segundo precinto, con los mismos miembros, sustitutos y presidente.

'' ' * * * * * * *

'' 'Cuando dos partidos principales se coligaren para unas elecciones generales, radicando en las oficinas del Secretario Ejecutivo ambas candidaturas generales con candidatos comunes en treinta o más precintos de la Isla, entonces cada miembro de los partidos coligados disfrutará de medio voto en las decisiones de las juntas electorales.

'' 'Si asimismo se coligaren los tres partidos principales, entonces cada miembro de los partidos coligados disfrutará de un tercio de voto en las decisiones de las juntas electorales; y entonces, o sea cuando los tres partidos principales se coligaren, el observador del primer partido por petición que se inscribiere en las próximas y subsiguientes elecciones de acuerdo con las disposiciones de la presente ley, tendrá voz y voto en las decisiones de las juntas electorales.'

''Tal como regía esta sección para las elecciones de 1932 (véase Ley No. 3 de julio 6 de 1932), las juntas locales de elecciones se componían del presidente (juez municipal o juez de paz) y de dos miembros más y sus sustitutos, nombrados por los organismos directi-

-vos centrales de los dos principales partidos políticos de Puerto Rico, con la aprobación de la Junta Insular de Elecciones, y de un observador y su sustituto nombrado por el organismo directivo central de cualquier partido político cuyo candidato para Comisionado a los Estados Unidos hubiera obtenido 10% o más del total de los votos depositados en las urnas para los candidatos para aquel cargo en las últimas elecciones precedentes, y de cualquier partido que hubiera inscrito candidatos por petición para toda la Isla en un 10% o más del voto total depositado en las urnas para candidatos para aquel cargo en las últimas elecciones precedentes.

" 'Sección 14.—(Enmendada por Ley No. 5 de 2 de abril de 1934). —Por partidos principales se definen los tres partidos políticos, cuyos candidatos para Comisionado Residente de Puerto Rico a los Estados Unidos obtuvieron el mayor número de votos en la columna de candidaturas generales de los respectivos partidos, depositados en las últimas precedentes elecciones; por partido por petición se define cualquier partido político que en las próximas y subsiguientes elecciones inscribiese (debería ser inscribiere) candidatos por petición en las tres cuartas partes o más de los precintos electorales de toda la Isla y en un diez por ciento o más del voto total depositado para todos los candidatos para el cargo de Comisionado Residente de Puerto Rico en los Estados Unidos en las últimas elecciones precedentes. Cualquier partido político que haya adquirido la categoría de partido principal o de partido por petición será considerado y disfrutará de los derechos de tal hasta que su candidato en su respectiva columna de candidaturas generales para Comisionado Residente de Puerto Rico en los Estados Unidos dejare de obtener en unas elecciones generales el número de votos necesarios para alcanzar dicha categoría de acuerdo con las disposiciones de esta sección.'

"Tal como regía esta sección para las elecciones de 1932 (véase Ley No. 3 de 6 de julio de 1932), por partidos principales se significaban los dos partidos políticos cuyos candidatos para Comisionado a los Estados Unidos obtuvieron el mayor número de votos en primero y segundo término, depositados para candidatos para aquel cargo en las precedentes elecciones; por partido de la mayoría se significaba el partido político cuyo candidato para Comisionado a los Estados Unidos obtuvo el mayor número de votos para candidato para dicho cargo en las elecciones precedentes; y por partido organizado se significaba un partido político cuyo candidato para Comisionado a los Estados Unidos hubiera obtenido un 10% o más de la totalidad de votos para todos los candidatos para aquel cargo en las elecciones precedentes. Cualquier partido que hubiera adquirido la categoría

de principal, partido de la mayoría o partido organizado, sería con-siderado y tratado como tal hasta que un candidato de dicho partido para Comisionado a los Estados Unidos dejase de obtener en unas elecciones subsiguientes el número de votos necesarios para alcanzar dicha categoría de acuerdo con las reglas anteriormente expuestas en esta sección.

" 'Sección 36.—(Enmendada por Ley No. 3 de 6 de julio de 1932). Cualquier partido político principal o cualquier partido que hubiere depositado más del diez por ciento del voto total de la Isla para Comisionado a Washington en las elecciones generales precedentes, tendrá derecho a nombrar candidatos por medio de convenciones debidamente convocadas. Dichas convenciones se celebrarán a más tardar el cinco de septiembre, y el presidente y el secretario de las mismas certificarán al Secretario Ejecutivo, a más tardar a las doce del día del 10 de septiembre, los nombres de los candidatos designados por la convención. Si cualquiera de los partidos dejare de presentar al Secretario Ejecutivo, el diez de septiembre a las doce del día, o antes, el nombre de algún candidato para algún cargo, entonces el partido que así faltare, perderá el derecho a la presentación de candidatos para tal cargo o cargos.

" 'Ningún partido político presentará más de una candidatura para cada cargo . . . *Disponiéndose,* que cualquier candidato podrá figurar en dos o más candidaturas que se hubieren de votar en las elecciones generales, pero ningún elector, al votar, podrá marcar bajo más de una candidatura general. *Entendiéndose, sin embargo,* que esta disposición no se interpretará en el sentido de coartar al elector en su derecho de votar candidaturas mixtas; *Disponiéndose, asimismo,* que las prescripciones de la Sección 40 de la Ley 79 de 1919, tal como quedó subsiguientemente enmendada por las Leyes No. 1 de mayo 7 de 1927 y No. 1 de mayo 5 de 1928, en cuanto las mismas estén en conflicto con lo dispuesto en la presente sección no tendrán efecto ni valor alguno; *Disponiéndose, además,* que para determinar los derechos de los partidos que tuvieren un candidato repetido a Comisionado a Washington, se considerará como principal aquel partido que hubiere recibido el mayor número de votos, asignándole a los otros partidos los derechos que hubieren adquirido, y en el orden establecido en la Sección 14 de esta Ley; *Disponiéndose, sin embargo,* que si los dos partidos principales se combinaren en cualquier forma, bien fusionándose o postulando el mismo candidato para Comisionado Residente en Washington, o nominando los mismos candidatos en una mayoría de los distritos senatoriales o representativos de la Isla, entonces los observadores nombrados de acuerdo con las secciones

1, 13 y 47 de esta Ley por los partidos organizados y los partidos inscritos por petición en toda la Isla a base del diez por ciento o más del voto total emitido para Comisionado Residente a los Estados Unidos en las últimas elecciones precedentes, tendrán voz y voto en las deliberaciones y decisiones de la Junta Insular y juntas locales de elecciones, y tendrán en todo respecto los mismos derechos y obligaciones que se estipulan para los representantes de los partidos principales; *Y disponiéndose, finalmente,* que cualquier empate en la votación en cualquier junta local de elecciones, constituirá *"ipso facto"* una apelación para ante la Junta Insular de Elecciones, del asunto objeto de empate y todo empate en la votación en la Junta Insular de Elecciones será decidido por el Gobernador de Puerto Rico.'

"La sección 40, a que se alude en la Sección 36 arriba transcrita, dispone que ninguna persona podrá ser candidato para más de un cargo ni para un mismo cargo en dos o más candidaturas distintas.

" 'Sección 47.—(Enmendada por Ley No. 5 de abril 2 de 1934.)— En cada colegio electoral de cada precinto habrá una junta de colegio, compuesta de tres inspectores y de tres secretarios, nombrados respectivamente por los tres partidos políticos principales, con las facultades y deberes que más adelante se proveen; *Disponiéndose,* que el organismo directivo central de cualquier partido por petición, podrá nombrar un representante que será conocido con el nombre de observador quien tendrá derecho de estar presente en cada colegio electoral en todo tiempo para observar todo el trabajo y procedimiento de su colegio electoral, con los derechos adicionales que específicamente se le confiere por esta ley, pero ningún otro derecho; *Disponiéndose, además,* que no se adjudicará ninguna papeleta a un partido o candidato, excepto por el voto unánime de la Junta de colegio incluyendo los observadores provistos en esta sección. . . .'

"Tal como regía esta sección, según enmienda de 6 de julio de 1932, cada junta de colegio se componía de dos inspectores y de dos secretarios nombrados por el Superintendente de Elecciones a propuesta de los dos partidos políticos principales; teniendo derecho cualquier partido político por petición que hubiera inscrito una candidatura general con Comisionado Residente en Washington, mediante petición de por lo menos un 10% de los electores legalmente inscritos y que votaron en las elecciones últimas precedentes, a nombrar un representante que sería conocido con el nombre de observador. Esta sección tal como rigió para las elecciones de 1932 contenía un *disponiéndose* que se leía como sigue:

" '. . . . si los dos partidos políticos principales se combinaren en

cualquier forma, bien fusionándose o postulando el mismo candidato para Comisionado Residente en Washington, o nominando los mismos candidatos en una mayoría de los distritos senatoriales o representativos de la Isla, el organismo directivo central de cualquier partido político organizado o cualquier partido político por petición que hubiere inscrito una candidatura general con Comisionado Residente a Washington, mediante petición de por lo menos un diez por ciento de los electores legalmente inscritos y que votaron en las últimas elecciones precedentes, podrá nombrar un representante que será conocido con el nombre de Inspector y un auxiliar que desempeñará las funciones de Secretario, nombrados por el Superintendente de Elecciones a propuesta del partido político por petición con derecho a nombrarlos y tanto el inspector como el secretario tendrán los mismos derechos, privilegios, obligaciones y prerrogativas que los inspectores y secretarios de los partidos principales . . .'

''Algunas de las disposiciones legales arriba transcritas son las mismas a las cuales nos llamó usted nuestra atención en su carta de 7 de agosto de este año.

''Una historia concisa de los partidos y sus evoluciones en las últimas tres elecciones precedentes es la siguiente:

''Con anterioridad a las elecciones de 1924, el Partido Republicano Puertorriqueño se dividió en dos sectores: uno de ellos retuvo la maquinaria del partido y continuó designándose con el nombre de Partido Republicano. Este sector convino con el Partido Unión de Puerto Rico un pacto o alianza para llevar los mismos candidatos al ticket electoral en las próximas elecciones. El otro sector celebró una convención separada y adoptó el nombre de Partido Constitucional Histórico y formó una coalición con el Partido Socialista para postular los mismos candidatos. Los partidos aliados, que entonces figuraban como partidos políticos principales, conservaron, sin embargo, existencia legal independiente hasta el día de las elecciones de 1928, por razón de haber figurado en columnas separadas en la papeleta electoral oficial, aunque teniendo cada uno de ellos los mismos candidatos que el otro para los cargos objeto de la elección (Martínez Nadal vs. Saldaña, 38 D.P.R. 446). En aquellas elecciones concurrieron también a las urnas los Partidos Socialista y Constitucional Histórico, figurando en columnas separadas pero con candidatos comunes. De acuerdo con el resultado de dichas elecciones la Unión de Puerto Rico obtuvo el mayor número de votos y por tanto continuó siendo partido principal de mayoría: le siguió en segundo turno el partido Socialista, que se convirtió en partido principal de minoría;

en tercer turno, el Partido Constitucional Histórico y en cuarto turno, el Partido Republicano.

"Para las elecciones de 1928 los partidos aliados inscribieron una candidatura común en una sola columna bajo el nombre de Alianza Puertorriqueña de los Partidos Unión de Puerto Rico y Republicano Puertorriqueño. Asimismo los partidos coligados figuraron sus candidatos en una sola columna en la papeleta general oficial bajo el nombre de Partido Socialista Constitucional. Como resultado de estas elecciones continuó la Alianza ostentando la condición de partido principal de mayoría, pero los partidos aliados se convirtieron ante la ley en un nuevo partido bajo el nombre de Alianza Puertorriqueña. (Barceló *vs.* Saldaña, 42 D.P.R. 254). El Partido Socialista Constitucional retuvo su puesto de partido principal de minoría. La fusión de los partidos aliados se debió a que por Ley de 7 de mayo de 1927 se enmendaron las secciones 40 y 42 de la Ley Electoral, en el sentido de prohibirse por la primera que persona alguna pudiera ser candidato para un mismo cargo en dos o más candidaturas distintas y disponerse por la segunda que los partidos que en las elecciones anteriores fueron a las urnas aliados o coligados, inscribiendo candidaturas separadas en las cuales figuraran en todo o en parte los mismos candidatos para iguales cargos, podrían inscribir en la Secretaría Ejecutiva de Puerto Rico, a petición del organismo central directivo de dicha alianza o coalición, un nombre general para la referida alianza o coalición y una insignia que contuviera las insignias de cada uno de los partidos aliados y coligados, inscribiéndose debajo de la misma una sola candidatura, y disponiéndose que la alianza o coalición que así concurriera a las urnas sería considerada como un solo partido, con las mismas prerrogativas, derechos y deberes que, de acuerdo con la ley, tenían los partidos que la integraran; siendo considerada como partido principal u organizado, de acuerdo con el número de votos que obtuviera en la elección.

"Con anterioridad a las elecciones de 1932 la Alianza Puertorriqueña y el otro sector político que se denominaba Republicano Puro o Constitucional Histórico se fusionaron, formando un nuevo partido político bajo el nombre de Unión Republicana. Este nuevo partido adquirió todos los derechos, prerrogativas, etc. de la Alianza Puertorriqueña convirtiéndose, por tanto, en partido principal de mayoría. Para las referidas elecciones de 1932 la Unión Republicana y el Partido Socialista se coligaron, radicando candidatos comunes para iguales cargos, aunque en distintas columnas. Como partidos por petición concurrieron a dichas elecciones el Partido Liberal y el Partido Nacionalista, ninguno de los cuales, al inscribirse, tenía representa-

ción alguna en las juntas electorales, por no haber postulado el primero candidato alguno para Comisionado Residente en las últimas elecciones precedentes (Martínez *vs.* Junta Insular de Elecciones, 43 D.P.R. 413) y por no haber obtenido el candidato para Comisionado a Washington del segundo el número de votos necesarios de acuerdo con la ley. Más tarde, sin embargo, por haber sido enmendadas las secciones 1, 13 y 47 de la Ley Electoral por la Ley No. 3 de 6 de julio de 1932, dichos partidos por petición pudieron nombrar observadores en todas las juntas electorales antes del día de las elecciones. Como resultado de estas elecciones el Partido Liberal Puertorriqueño se convirtió en partido principal de mayoría; el Partido Unión Republicana en partido principal de minoría; y el Partido Socialista, en partido organizado. El Partido Nacionalista perdió su *status* como partido político por petición. Luego, a virtud de la enmienda de la Sección 14, arriba transcrita, el Partido Socialista pasó a ser partido principal también.

"Teniendo en cuenta la ley y los hechos antes expuestos, veamos si en la opinión de esta oficina de 15 de agosto próximo pasado se interpretaron correctamente las secciones de nuestra Ley Electoral aplicables al punto en controversia.

"En dicha opinión se afirma en uno de sus párrafos que actualmente y a los fines de ley no existen partidos coligados, mientras en otro párrafo subsiguiente se dice que 'es un hecho cierto que dos de los partidos principales (Unión Republicana y Partido Socialista) que tienen representación en esa Junta, se coligaron o combinaron en la forma como dispone la sección 36 para las elecciones de 1932, y también es cierto que al enmendarse la sección 2 por la Ley No. 5 de 2 de abril de 1934, se consideró el resultado de esas elecciones para clasificar a los partidos principales políticos y hasta tanto por el resultado de estas elecciones no se cambie la naturaleza de los mismos a los fines de la composición de esa Junta, se entiende que los dos partidos políticos principales que existían en las elecciones de 1932, continúan combinados y así también continúa siendo partido organizado el que lo fué para aquellas elecciones y tiene en la Junta Insular de Elecciones la representación que determina el disponiéndose de la Sección 36, o sea un observador con voz y voto, y cualquier empate en la votación ha de resolverse en la forma y manera como se dispone en la referida sección.'

"Como se podrá ver, entre ambos párrafos existe un conflicto o contradicción que imposibilita el que puedan armonizarse, ya que mientras en el primero se sostuvo que a los fines de ley no existen actualmente partidos coligados, se sostiene en el segundo que los dos

partidos políticos que fueron coligados a las elecciones de 1932 continúan combinados. De estas dos conclusiones la última, según nuestro criterio, es la correcta, ya que de acuerdo con la ley, para que dichos dos partidos puedan considerarse descoligados, es requisito indispensable que al inscribir sus candidaturas para las próximas elecciones lo hagan con candidatos distintos.

''Como hemos manifestado anteriormente, los Partidos Unión Republicana y Partido Socialista unieron sus fuerzas o se coligaron para las elecciones de 1932 radicando candidaturas comunes para todos los cargos, si bien figuraron en la papeleta general en distintas columnas. Esta coalición tuvo vida legal a mi juicio, desde el día 10 de septiembre de 1932, al radicarse en la Secretaría Ejecutiva las candidaturas de dichos partidos con candidatos comunes para el cargo de Comisionado Residente y para todos los demás cargos en todos los precintos electorales en que está dividida la Isla, todo ello de acuerdo con la sección 36 de la Ley Electoral, según fué enmendada por la ley de julio 6 de 1932. Ignoro si a esta coalición se le fijó término de duración; pero aun cuando no se le hubiera fijado expresamente, sin embargo, dada la naturaleza especial y los fines y propósitos de los partidos políticos, el término de duración no podía ser otro que el de cuatro años (Barceló *vs.* Saldaña), de modo que la referida coalición está actualmente en todo su vigor y lo estará hasta el día 10 de septiembre de 1936, año de las próximas elecciones generales, en la cual fecha se considerará dicha coalición terminada o continuada, dependiendo de que los partidos coligados radiquen sus candidaturas para dichas elecciones con candidatos comunes o candidatos distintos, o a menos que antes de dicha fecha, por algún acto legal positivo de su parte, demuestren la inexistencia de la coalición.

''Además de lo expuesto, de acuerdo con la sección 14 de la Ley Electoral, el *status*, derechos y prerrogativas de los partidos políticos se determinan por el número de votos que obtengan sus candidatos en las elecciones precedentes, los que conservarán hasta que en unas elecciones generales dejaren de obtener los votos necesarios. Asímismo se dispone por la sección 36 de dicha ley que los derechos de partidos coligados se determinan por el número de votos que hayan obtenido sus candidatos en las últimas elecciones. Por último, la sección 42 del mismo estatuto, según fué enmendada por la Ley No. 1 de 7 de mayo de 1927, concede a los partidos políticos que en elecciones anteriores hubieran ido a las urnas aliados o coligados, inscribiendo candidaturas separadas con candidatos comunes para iguales cargos, un derecho que no concede a los partidos que fueron separados a dichas elecciones, o sea el de inscribir un nombre general para dicha

alianza o coalición, etc. De la lectura de todas estas secciones aparece claro que la propia ley expresamente sigue considerando coligados a los partidos que en esta forma concurrieron a las elecciones de 1932.

"Se sostiene también en la opinión anterior que los dos últimos párrafos de la sección 13, tal cual quedó enmendada por la ley de 1934, tiene efecto prospectivo únicamente; o en otras palabras, que 'si antes del día de las elecciones del año 1936, o sea después del 10 de septiembre, a las doce del día, surgen las circunstancias a que se refieren los párrafos de la sección 13 antes copiada, entonces y desde ese momento es que los representantes de los partidos principales en las juntas electorales pasarán a tener voz y voto en la forma y manera como lo disponen los referidos párrafos, esto es, si la coalición es de dos partidos principales sus representantes tendrán medio voto, y si la coalición es de tres partidos principales sus representantes tendrán un tercio de voto en las decisiones de todas las juntas electorales.'

"El primero de estos párrafos dispone que cuando dos partidos principales se coligaren para unas elecciones generales, radicando en las oficinas del Secretario Ejecutivo ambas candidaturas generales, con candidatos comunes en treinta o más precintos de la Isla, entonces cada miembro de los partidos coligados disfrutará de medio voto en las deliberaciones y decisiones de las juntas electorales; y el otro párrafo dispone que si la coalición fuere de los tres partidos principales, entonces cada miembro de los partidos coligados disfrutará de un tercio de voto en las deliberaciones y decisiones de las juntas electorales. En este último caso, o sea cuando los tres partidos principales se coligaren, el observador del primer partido por petición que se inscribiere en las próximas y subsiguientes elecciones de acuerdo con las disposiciones de esta ley, tendrá voz y voto en las decisiones de las juntas electorales.

"No creo que en este caso esté estrictamente envuelta la cuestión de retroactividad de la ley sino más bien la situación de hechos existentes al entrar en vigor la ley enmendatoria antes citada; en otras palabras, si el día 2 de julio de 1934 y actualmente se dió y se da la condición de la existencia de dos partidos principales coligados.

"Los partidos principales son actualmente el Liberal, la Unión Republicana y el Socialista. No existen ya partidos organizados e ignoro cuál es el primer partido por petición que se haya inscrito para las próximas elecciones de 1936.

"Si el primer párrafo antes citado se ha de considerar con efecto prospectivo únicamente, resultaría que los partidos Unión Republicana y Socialista, actualmente coligados, tendrían un voto cada uno en

las deliberaciones y decisiones de las juntas electorales por un voto que tendría el Partido Liberal, es decir que existiría una proporción de dos a uno, lo cual no sería justo ni equitativo y violaría el principio de igualdad o de igual representación que informa la legislación electoral. Por otra parte, si ha de persistir la interpretación dada a estos párrafos, uno de los partidos principales iría a las inscripciones que han de celebrarse próximamente con desventaja respecto a los otros dos partidos principales, pues dichos dos partidos en todos sus actos, desde las elecciones de 1932 hasta ahora, han demostrado y siguien demostrando que están coligados para todos los fines de ley, especialmente para los fines electorales. Como hemos dicho anteriormente, los partidos Liberal y Unión Republicana adquirieron el *status* de partidos políticos principales como resultado de las elecciones de 1932 y segun la ley entonces vigente la representación de dichos dos partidos principales resultaba equilibrada en la Junta Insular de Elecciones y en las otras juntas electorales. Por tal motivo, al enmendarse la sección 14 y reconocerse el Partido Socialista la consideración de partido principal se enmendó al mismo tiempo la sección 13 mediante la inserción de los dos párrafos antes referidos de manera que subsistiera la igualdad de representación en dichas juntas para los partidos principales adversarios.

''Tenemos que llegar a esa conclusión si estudiamos el modo y tiempo en que se usó el verbo coligar; si consideramos las causas o motivos que indujeron al poder legislativo a aprobar dichos párrafos y si tenemos èn cuenta las otras secciones 'in pari materia' de la Ley Electoral así como los hechos y circunstancias del caso.

''Los párrafos que comentamos disponen que cuando dos partidos principales se coligaren para unas elecciones generales radicando candidaturas con candidatos comunes en más de treinta precintos electorales, cada miembro de los partidos coligados disfrutará de medio voto en las deliberaciones y decisiones de las juntas electorales. Coligaren es el futuro imperfecto de subjuntivo del verbo coligar. Según la gramática castellana, el modo subjuntivo expresa el hecho como un deseo o como dependiente y subordinado a otro hecho indicado por uno cualquiera de los otros tres modos, como por ejemplo, 'deseo que vengas', 'leería si me escuchaseis', 'cuando dos partidos principales se coligaren radicando candidaturas generales,' y el futuro imperfecto de subjuntivo anuncia el hecho como no acabado y siempre como contingente, referido ya al presente, ya al futuro. Enunciándose el hecho como no acabado, referido ya al presente ya al futuro, entiendo que si al empezar a regir la Ley No. 5 de 2 de abril de 1934 en dos de julio del mismo año, existían dos partidos coligados, rige

desde esa fecha la disposición en cuanto a que cada miembro de los partidos coligados disfrutará de medio voto en las decisiones y deliberaciones de las juntas electorales, máxime cuando no existe palabra alguna que modifique el término 'elecciones generales', que lo mismo puede referirse a las elecciones ppdas. que a las venideras.

"Las leyes electorales se interpretan liberalmente sobre la base de que fueron aprobadas para impedir el fraude, preservar al ciudadano la integridad del derecho del sufragio y garantizarle la libertad de selección.

" 'The purpose of elections is to obtain fair expression of the preferences of the qualified voters in accordance with the established law.' Hall vs. Barton, 195 N. E. 753.

" 'In the absence of fraud, election statutes will be liberally construed to secure the elector opportunity to freely and fairly "cast his ballot and to uphold the will of the electorate and prevent disfranchisement." ' Lumen vs. Simpson, 194 N. E. 341.

" 'Statutory provisions as to elections must be interpreted on theory that statutes were enacted to prevent fraud and mistakes and to secure freedom of choice, and are not to be so construed as to make right of voting and having votes counted with accuracy subject to technical obstructions not affecting merits of election.' Chancy v. Wallace, 193 N. E. 546.

"Si aceptáramos que los partidos de referencia se desligaron o descoligaron inmediatamente después de celebradas las elecciones, dichos partidos deberían considerarse a todos los fines legales como partidos de minoría, y de llegarse a esta conclusión tendría que aceptarse que la Coalición existió únicamente el día de las elecciones a los fines de triunfar sobre los partidos que concurrieron solos a las elecciones de 1932. Tal interpretación no sólo nos conduciría a un absurdo, sino que patrocinaría el fraude electoral.

"Si cerráramos los ojos ante la realidad de lo hechos, podría admitirse que hasta tanto no llegue el 10 de septiembre no podrá determinarse si los dos partidos que actualmente constituyen la mayoría legislativa están coligados o no, pero siendo la realidad otra, o sea que dichos partidos se hallan actualmente coligados, lo que se podrá determinar en la fecha antes indicada será si continúan coligados o no.

"No debemos olvidar que en las elecciones de 1932 el Partido Socialista perdió su *status* como partido principal y que al concedérsele nuevamente dicho *status* por la ley de 1934 no pudo ser la intención del legislador dar ventajas a la Coalición sobre el otro partido principal, de manera que si la ley ha de interpretarse retrospectivamente

en tanto en cuanto se refiere a las disposiciones referentes al *status* del Partido Socialista, debe dársele el mismo efecto a sus disposiciones relacionadas con el voto de los representates de los partidos principales en las juntas electorales.

"Otras de las conclusiones erróneas a que se llegó en la ameritada opinión es aquella en la que se afirma que continúa siendo partido organizado el que lo fué para las elecciones de 1932, y que dicho partido tiene en la Junta Insular de Elecciones la representación que determina el disponiéndose de la sección 36, o sea un observador con voz y voto. Hemos argumentado anteriormente que como resultado de las elecciones de 1932 el Partido Liberal se convirtió en partido principal de mayoría, la Unión Republicana vino a ser partido principal de minoría y el Partido Socialista adquirió la categoría de partido organizado, por haber obtenido más de un 10% de la totalidad de votos para todos los candidatos para el cargo de Comisionado Residente en dichas elecciones. En otras palabras, el Partido Socialista se convirtió de partido principal de minoría en partido organizado, ocupando su lugar la Unión Republicana que fué a dichas elecciones como partido principal de mayoría, categoría que le arrebató en las urnas el Partido Liberal de nueva creación. El Partido Nacionalista perdió su *status* de partido organizado por no haber obtenido un 10% de la totalidad de votos para todos los candidatos para el cargo de Comisionado a Washington.

"Al cambiar el *status* de los partidos cambió también su representación en la Junta Insular de Elecciones, de modo que el observador del Partido Liberal se convirtió en miembro de la Junta representando al partido principal de mayoría, el miembro de la Junta que representaba al Partido Socialista se convirtió en observador y desapareció el observador que tenía el partido Nacionalista. Esta situación se prolongó hasta el 2 de junio de 1934, en que empezó a regir la Ley No. 5, que enmendó la Sección 14 y le dió al Partido Socialista la categoría de partido principal. Por esta sección quedaron eliminados los partidos organizados y se concedió a los partidos por petición un observador, una vez inscritos, de suerte que actualmente no existen observadores de partidos por petición en la Junta Insular de Elecciones.

"Por todas las razones expuestas, soy de opinión que los miembros de la Junta Insular de Elecciones y demás juntas electorales que representan a los partidos principales actualmente coligados (Partido Unión Republicana y Partido Socialista) disfrutan de medio voto únicamente en las decisiones de dichas juntas.

"Esta opinión revoca la anterior de esta oficina de agosto 22 de 1935."

En una demanda radicada en la corte de distrito el 7 de octubre los demandantes alegaron: que el Partido Unión Republicana y el Partido Socialista de Puerto Rico son dos partidos políticos principales de la Isla de Puerto Rico, definidos y reconocidos por ley; que Leopoldo Figueroa y Bolívar Pagán son miembros de la Junta Insular de Elecciones en representación de estos dos partidos políticos; que Charles H. Terry, es miembro y Presidente de la Junta Insular de Elecciones; que el partido Liberal Puertorriqueño es un partido político principal de la Isla de Puerto Rico, definido y reconocido por ley; y que Frank A. Martínez es el miembro representante del partido Liberal en dicha Junta. El resto de la demanda lee así:

"3.—Que la Junta Insular de Elecciones es una Junta oficial del Gobierno Insular de Puerto Rico, creada por ley, y actualmente está compuesta de cuatro miembros, a saber: el mencionado miembro presidente que es el funcionario ejecutivo, y los otros tres miembros arriba expresados en representación de los tres partidos políticos principales de la Isla de Puerto Rico, y cada uno de estos tres partidos políticos principales disfruta también por ley de igual representación con voz y voto en todas las juntas y organismos electorales creados por la vigente Ley Electoral.

"4.—Que a los fines de hacer los trabajos preparatorios para las futuras elecciones generales que se celebrarán en Puerto Rico en el mes de noviembre del año 1936 de conformidad con disposiciones de la Ley Orgánica y de la Ley Electoral, los miembros de dicha Junta Insular de Elecciones fueron convocados urgentemente para reunirse el 2 de octubre de 1935, para conocer importantes asuntos, deliberar sobre ellos y resolverlos mediante acuerdos por votación de los miembros de la susodicha Junta.

"5.—Que dicha reunión de la Junta Insular de Elecciones fué suspendida, hasta dentro de breves días cuando es indispensable y urgente celebrar la reunión para tomar los acuerdos por votación a que se refiere la alegación anterior; y que tal suspensión fué debida a la incertidumbre creada en la mente de los miembros de la Junta Insular de Elecciones con motivo de los hechos que se mencionan más adelante.

"6.—Que, con motivo de la interpretación de la referida Ley Electoral (Ley No. 79 aprobada el 23 de julio de 1919), según quedó enmendada por la Ley No. 5 aprobada el 2 de abril de ·1934, la oficina del Procurador General de Puerto Rico ha emitido dos opiniones contradictorias, con fecha 22 de agosto y 30 de septiembre de 1935, que afectan a la votación de los miembros que en dicha Junta representan a los partidos políticos principales Unión Republicana y Socialista, y que afectan también a los derechos de representación igual y justa que dicha Ley No. 5 de 1934 ha reconocido a todos los partidos políticos principales de la Isla de Puerto Rico.

"7.—Que los demandantes hacen parte de esta demanda y acompañan con la presente copias de ambas referidas opiniones contradictorias emitidas por el Procurador General de Puerto Rico.

"8.—Que, a los fines electorales a que se refiere la mencionada Ley No. 5, aprobada el 2 de abril de 1934, los partidos Unión Republicana y Socialista, no están coligados actualmente, ni tampoco estos dos partidos estaban coligados cuando se aprobó ni cuando comenzó a regir dicha Ley No. 5 de 1934.

"9.—Que los partidos Unión Republicana y Socialista son dos partidos principales independientes, y cada uno de los cuales tiene vida viva y activa, de manera separada e independiente uno del otro, con sus respectivos organismos, y sus comités centrales y locales, y, aun más, cada uno de estos dos partidos mantiene independientemente ante la conciencia pública distintos reglamentos, distinta dirección, distinto programa, y distinto símbolo y banderas; y estos dos partidos Unión Republicana y Socialista todavía no han convenido, propuesto, discutido ni considerado en forma alguna ninguna combinación ni coalición para candidatos comunes en ningún precinto de la Isla de Puerto Rico para las elecciones generales de 1936.

"10.—Que los demandantes alegan que la referida Ley Electoral (Ley No. 79 aprobada el 23 de julio de 1919, según quedó enmendada por la vigente ley No. 5 aprobada el 2 de abril de 1934) debe ser interpretada dando a sus preceptos aplicación prospectiva, según los principios generales de Derecho y según la doctrina universal de hermenéutica legal que rige en la interpretación de estatutos sustantivos, y especialmente a tenor de la letra y del espíritu de la mencionada ley No. 5 aprobada el 2 de abril de 1934 que establece 'representación justa e igual permanente' a todos los partidos políticos principales de la Isla de Puerto Rico; y entienden los demandantes que los representantes de los partidos políticos principales Unión Republicana y Socialista, lo mismo que el del partido Liberal, disfrutan cada uno de ellos de voz y voto completo en las deliberaciones

y votaciones de la Junta Insular de Elecciones, y este estado de derecho prevalecerá hasta que fuere un hecho consumado en el día futuro que indica la misma Ley Electoral o sea cuando se hayan radicado en la oficina del Secretario Ejecutivo de Puerto Rico de la manera que determina la ley candidaturas comunes o coligadas de estos dos partidos Unión Republicana y Socialista, o de los partidos Unión Republicana y Liberal Puertorriqueño, o de los partidos Socialista y Liberal Puertorriqueño, o de los partidos Unión Republicana, Socialista y Liberal Puertorriqueño, según fuere la situación de hechos en el futuro, cuando entonces los representantes de cada uno de estos referidos tres partidos políticos principales disfrutarán en la Junta Insular de Elecciones de un tercio de voto, de medio voto o de un voto completo, según fuere el caso futuro.

"11.—Que en la referida opinión emitida por el Procurador General con fecha 30 de septiembre de 1935 se mantiene el criterio de que la mencionada Ley No. 5 de 1934, en lo que se refiere a la votación de los representantes de los partidos Unión Republicana y Socialista antes de la fecha indicada en la misma Ley Electoral para la radicación de candidaturas coligadas, debe ser interpretada en sentido retrospectivo, o sea aplicando a hechos ocurridos en septiembre de 1932 (para las elecciones generales de 1932) una ley aprobada el 2 de abril de 1934, que, en lo que se refiere a la restricción de los votos de los miembros de dicha Junta, fué provista para ser aplicada a otros hechos posteriores que todavía no han ocurrido.

"La interpretación del Procurador General según su mencionada opinión de 30 de septiembre de 1935 se funda en meras conjeturas sobre sucesos que no han acaecido y que son inseguros y aleatorios.

"El miembro representante del partido Liberal en la Junta Insular de Elecciones mantiene el mismo criterio expresado por el Procurador General en su opinión de fecha 30 de septiembre de 1935, y el miembro presidente que es el funcionario ejecutivo de la Junta Insular de Elecciones se dispone a poner en vigor la susodicha Ley No. 5 de 1934 siguiendo el criterio de la opinión de fecha 30 de septiembre de 1935, o sea privando de medio voto a cada uno de los representantes de dichos partidos Unión Republicana y Socialista en dicha Junta.

"Que la actitud del presidente de la Junta Insular de Elecciones y del miembro liberal de dicha Junta según se ha expresado pone en inminente peligro el derecho de los partidos Unión Republicana y Socialista y de sus respectivos representantes en dicha Junta, por cuanto teniendo cada uno de los representantes de estos dos partidos medio voto en la Junta Insular de Elecciones antes de radicarse las candida-

turas para las elecciones generales de 1936 en la fecha expresada para ello en la Ley Electoral, serían perjudicados estos dos partidos Unión Republicana y Socialista, y tales votaciones de medio voto de cada uno de los representantes de esos dos partidos principales Unión Republicana y Socialista serían una violación de la letra, del espíritu y de la intención de la Asamblea Legislativa de Puerto Rico en la mencionada Ley No. 5 de 1934 que otorga representación legal y justa permanente a los tres partidos políticos principales de la Isla de Puerto Rico.

"12.—Que el perjuicio y peligro inminente a que se refiere la alegación anterior, puede ser producido contra cualquiera de los partidos Unión Republicana y Socialista en las votaciones sobre inclusión y exclusión del registro de electores de estos partidos, según los trámites que a tal efecto provee la Ley Electoral, que es uno de los asuntos importantes que habrá de considerar y sobre ellos votar la Junta Insular de Elecciones próximamente.

"13. Que, para aclarar la situación que han creado las susodichas opiniones contradictorias emitidas por la oficina del Procurador General, y para impedir la desigualdad e injusticia inminente según se expresa arriba, y como un remedio contra la incertidumbre e inseguridad que dichas opiniones contradictorias han creado en el seno de la Junta Insular de Elecciones, y para evitar multiplicidad de pleitos dilatorios que pudieran entorpecer la buena marcha de tan importante organismo como la Junta Insular de Elecciones, los demandantes acuden con el presente recurso ante esta Hon. Corte acogiéndose a la vigente 'Ley Uniforme de Sentencias Declaratorias' aprobada el 25 de abril de 1931.

"En virtud de todo lo cual, dichos demandantes ruegan que, previos los trámites legales del caso, esta Hon. Corte se sirva en su día dictar la correspondiente sentencia o decreto declaratorio en el sentido de que la Ley Electoral, según quedó enmendada por la Ley No. 5 aprobada el 2 de abril de 1934, debe ser interpretada de conformidad con el criterio de los demandantes según queda expresado en el hecho décimo de esta demanda, o sea que mientras sea un hecho consumado la radicación futura en Secretaría Ejecutiva de Puerto Rico de candidaturas comunes o coligadas de los referidos partidos principales Unión Republicana y Socialista, o de los partidos Unión Republicana con el Liberal Puertorrqueño, o del Liberal Puertorriqueño con el partido Socialista, o de los tres partidos principales, hasta entonces los dos partidos Unión Republicana y Socialista disfrutan de un voto completo en las deliberaciones y votaciones de la Junta Insular de Elecciones; y se solicita de esta Hon. Corte, además,

que dicte una orden requiriendo al presidente de la Junta Insular de Elecciones que se abstenga de realizar acto alguno que cohiba el ejercicio y el peso de un voto completo a cada uno de los representantes de los partidos Unión Republicana y Socialista en la Junta Insular de Elecciones, hasta su día futuro, con los demás pronunciamientos legales pertinentes en ley y justicia.''

La corte de distrito declaró sin lugar una excepción previa por defecto de partes demandadas y declaró con lugar una excepción previa de falta de hechos suficientes para constituir una causa de acción. Los demandantes se negaron a enmendar y han apelado de una sentencia declarando sin lugar la demanda. De la resolución declarando con lugar la excepción previa de falta de hechos suficientes para constituir una causa de acción, tomamos el siguiente extracto:

''En cuanto a la segunda cuestión, o sea la excepción previa de falta de causa de acción, de una lectura cuidadosa de la demanda no aparece que realmente exista una controversia o discrepancia a resolver en el seno de la Junta Insular de Elecciones con respecto a la interpretación de la Ley Electoral que requiera actuación alguna por parte de este Tribunal. La sección 13 de la Ley Electoral, tal como quedó enmendada por la Ley núm. 5 de 1934 (Leyes de dicho año, pág. 189), dice, en lo que respecta a partidos principales que se coligaren para unas elecciones generales, que cada miembro de los partidos coligados, si fueren dos, disfrutará de medio voto en las decisiones de las juntas electorales. La Sección 14 define lo que se llama 'partidos principales' al efecto de que serán los tres partidos políticos cuyos candidatos para Comisionado Residente de Puerto Rico a los Estados Unidos, obtuvieron en la columna de candidaturas generales, el mayor número de votos en las últimas precedentes elecciones. Alega la petición o demanda en este caso, que el miembro o representante del partido Liberal y el Presidente de la Junta Insular de Elecciones, se disponen a poner en vigor la anterior disposición siguiendo la opinión del Procurador General de fecha 30 de septiembre de 1935, o sea privando de medio voto a cada uno de los representantes de los partidos demandantes en dicha Junta.

''La ley sobre sentencias o decretos declaratorios no puede servir de vehículo para que un tribunal emita simplemente una opinión que pueda o no ser seguida por las personas interesadas, sino que expresamente dispone que la sentencia o decreto que al efecto se dicte por el tribunal, haya de poner fin a una controversia o despejar

una incertidumbre (sección 5 de la ley). No aparece de la demanda que exista controversia alguna entre las partes, sino una mera diferencia de opinión, y no existiendo tal controversia no puede haber tampoco incertidumbre en cuanto a la forma y manera que han de adoptar para la votación los miembros demandados de la Junta Insular de Elecciones. Toda la cuestión planteada en la petición o demanda se reduce a resolver si existe o no una coalición entre los partidos Unión Republicana y Socialista, lo cual es pura y simplemente una cuestión de hecho. El procedimiento de sentencia o decreto declaratorio puede establecerse cuando existe divergencia acerca de la interpretación o validez de algún estatuto, ordenanza, contrato o franquicia (sección 2 de la Ley), y si para considerar y resolver la misma está envuelta la determinación de un hecho, entonces puede tal hecho ser considerado y resuelto en la misma forma que en cualquier otro pleito civil; pero cuando el estatuto, la ordenanza, el contrato o la franquicia no dan lugar a divergencia o discrepancia en su interpretación, porque su letra está libre de toda ambigüedad, no procede entonces la aplicación de la Ley de Sentencias Declaratorias.''

 Si la corte de distrito, en la segunda cláusula de la última oración en el párrafo que antecede quiso decir que el lenguaje usado en el penúltimo párrafo de la Sección 13 de la Ley de Inscripciones y Elecciones de 1919 (núm. 79, pág. 531), tal como fué enmendada en 1934 (Leyes de ese año, núm. 5, págs. 189–195), está tan exento de ambigüedad que no deja lugar a dudas o a interpretaciones, entonces no podemos concurrir con ese criterio. El párrafo en cuestión provee:

''Cuando dos partidos principales se coligaren para unas elecciones generales, radicando en las oficinas del Secretario Ejecutivo ambas candidaturas generales con candidatos comunes en treinta o más precintos de la Isla, entonces cada miembro de los partidos coligados disfrutará de medio voto en las decisiones de las juntas electorales.''

Si este lenguaje significa lo que se interpretó decía en la primera de las dos opiniones suministradas al Presidente de la Junta de Elecciones por el Departamento de Justicia o si debe interpretarse en la forma que lo fué por el referido De-

partamento en la segunda de las dos opiniones, es cuestión a debatir. Ella es una que no fué resuelta por la corte de distrito. Por el contrario, la dicha corte inferior asumió, sin resolverlo, que los dos partidos que habían formado una coalición para fines electorales en 1932 tenían derecho tan sólo a medio voto cada uno como miembros de la Junta Insular de Elecciones durante el período de inscripciones de 1936, no obstante haberse alegado que para los fines de ese año electoral no existe tal coalición. Al hacerlo así, la corte desde luego eludió la cuestión directamente planteada por la demanda.

Ni la cuestión relativa a la forma en que debe ser interpretado el estatuto, ni la cuestión atinente a si el estatuto estaba sujeto a interpretación se hallaban propiamente ante la corte de distrito. Esas cuestiones se dirigen a los méritos de la supuesta controversia, más no a la suficiencia de la demanda. La única cuestión planteada por la excepción previa de falta de hechos suficientes para determinar una causa de acción fué la de si los hechos alegados en la demanda dan derecho a los demandantes a que se determine judicialmente la intención legislativa. Los demandantes no fueron oídos sobre la cuestión últimamente mencionada y deben tener la oportunidad de serlo sobre la misma antes de que ella sea determinada por la corte de distrito o por este tribunal.

Lo que la corte de distrito resolvió definitivamente fué que la demanda no aducía hechos suficientes para determinar una causa de acción toda vez que no demostraba la existencia de una controversia judicial. Admitiendo, según lo hacemos, que debe existir tal controversia (Borchard "On Declaratory Judgments", pág. 26; 87 A.L.R. 1213; 68 A.L.R. 117; 50 A.L.R. 45) la única cuestion ante nos es si la corte de distrito cometió o no error al decidir que no existía controversia alguna.

No solamente tenían los demandantes un interés tangible en obtener sentencia sino que había una reclamación contraria y el procedimiento era contencioso por naturaleza. Borchard,

págs. 26, 27. Tenemos aquí no sólo la semilla en estado de madurez de una controversia real, sino una batalla en todo su apogeo. Borchard, pág. 41. La disputa tiene todos los indicios de una controversia real, genuina y efectiva. La cuestión no es académica. Los demandantes están alegando un derecho contra demandados que tienen intereses en contrario. El interés de los demandantes es presente, no futuro. La acción no es ficticia ni se trata de un pleito resultante de una colusión para obtener una opinión. No tenemos dudas de que una sentencia final en el presente caso resolverá la controversia. Esta no sólo es genuina sino que está pendiente de una decisión, teniendo los demandantes y los demandados intereses potencial y efectivamente opuestos. Los alegados derechos de los demandantes aparecían estar directamente en controversia y en peligro. Los hechos están suficientemente completos, maduros, próximos y en sazón para colocar a los demandantes ante su adversario y para justificar la expedición de un recurso judicial. Borchard, págs. 31–36. La demanda pudo haber sido más específica respecto a actos tangibles o a amenazas que tendían a suscitar una aprensión justificable, temor, y peligro de daños legales. Pero los hechos aducidos demuestran a nuestro juicio que el peligro no es demasiado remoto. Borchard, pág. 38; *State* v. *Dammann,* 254 N.W. 759, 761; *Wingate* v. *Flynn,* 139 N.Y. Misc. Rep. 779, confirmado en 256 N.Y. 690; *Bareham* v. *Rochester,* 246, N.Y. 140, 158 N.E. 51; *In re Frecholders* v. *Hudson County,* 143 Atl. 536, 537; *Miller* v. *Miller,* 149 Tenn. 463; *Washington-Detroit Theatre Co.* v. *Moore,* 249 Mich. 673; *Sullivan & Sons. Mfg. Co.* v. *Ideal Building & Loan Assoc.,* 313 Pa. 407, 98 A.L.R. 1; *Moore* v. *Moore,* 147 Va. 460, 137 S.E. 488; y véase además, 87 A.L.R. 1236; 68 A.L.R. 126 y 50 A.L.R. 51.

Una excepción previa admite todos los hechos bien alegados. No se pretende que los hechos aducidos en la demanda no lo estuvieran. Los hechos que la corte de distrito tuvo ante sí están incontrovertidos. Aun si hubiese surgido la

contienda al radicarse la contestación no habría cuestiones complicadas de hecho. Ante las cortes insulares no existen los juicios por jurado. El tomar las declaraciones de testigos, cuando éstas son necesarias, no podría causar mayores inconvenientes. Borchard, págs. 114-117. Sea ello como fuere, no podemos convenir con la corte de distrito en que la cuestión presentada por la demanda es puramente una de hecho. Eliminando cualquier cuestión mixta de hecho y de derecho, toda cuestión de hecho en el presente recurso será incidental y estará subordinada a las conclusiones legales a que se llegue. La cuestión primordial es una de interpretación estatutaria.

*Debe revocarse la sentencia apelada, declararse sin lugar la excepción previa de falta de hechos para determinar una causa de acción y devolverse el caso para ulteriores procedimientos no inconsistentes con esta opinión.*