934

THE TEXAS COMPANY (P. R.), INC., demandante y apelante, *v.*
LA JUNTA DE COMISIONADOS DE SAN JUAN, compuesta de
R. RIVERA ZAYAS, E. G. GONZÁLEZ, R. RAMOS CASELLAS, G.
DE LA HABA y A. M. PESQUERA, demandada y apelada.

No. 7201.—*Sometido:* Abril 3, 1936.   *Resuelto:* Mayo 20, 1936.

*James R. Beverley, José López Baralt* y *R. Castro Fernández,* abogados de la apelante; *J. Valldejuli Rodríguez,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR TRAVIESO, emitió la opinión del tribunal.

La Junta de Comisionados de San Juan, creada por la Ley núm. 99, de 15 de mayo de 1931 (pág. 627), y facultada por dicha ley para legislar en lo referente a la administra-

ción y gobierno de la Capital de Puerto Rico, en 6 de junio de 1933 aprobó la ordenanza núm. 144, fijando las tarifas para el cobro de impuestos y arbitrios sobre diversos negocios o actividades, y, entre otros, sobre las bombas para el expendio de gasolina y aceites lubricantes, instaladas dentro de los límites de la Municipalidad de San Juan.

Dispone la sección 1 de la citada ordenanza, que el Tesorero de la Capital cobrará, por el año 1933-34 y años sucesivos:

"* * * * * * *

"3. Arbitrio sobre bombas para venta de gasolina, ya estén instaladas sobre terrenos públicos o privados, $20.

"4. Arbitrio sobre bombas para venta de aceites lubricantes, instaladas sobre terrenos públicos o privados, $10."

Dispone además que cualquier infracción de las disposiciones de la ordenanza será castigada con multa mínima de $10 y máxima de $50 o prisión máxima de quince días, o ambas penas, a discreción de la corte.

La demandante apelante alega que es dueña de doce bombas que utiliza para la venta de gasolina, instaladas en la Ciudad de San Juan, nueve de ellas operadas por la misma demandante y las otras tres por sus arrendatarios; que además de las contribuciones que le son impuestas por el Gobierno Insular, sobre la propiedad imponible que la corporación demandante posee dentro del municipio de San Juan, dicha corporación paga al Gobierno Insular una patente o licencia como traficante al por mayor y al detall en gasolina, que asciende a $1,080 al año; que paga una patente por igual concepto al Gobierno de la Capital, ascendente a $445 *per annum;* y que el Pueblo de Puerto Rico le cobra el 2 por ciento por concepto de la venta de petróleo y sus derivados, con excepción de la gasolina, por la que paga siete centavos por cada galón, y del *gas oil* y *diesel oil,* por los que paga cuatro centavos por cada galón vendido en la Isla.

Se pide en la demanda se dicte sentencia en la que se declare que la Ordenanza núm. 144, aprobada en 6 de junio

de 1933, es ilegal, confiscatoria, nula e inválida, en cuanto impone un arbitrio sobre la explotación de cada bomba para venta de gasolina, por los motivos siguientes:

1. Porque impone *una doble contribución,* toda vez que el Gobierno de la Capital impone y cobra a la demandante una patente por dedicarse *a la venta de petróleo y sus derivados, que es el mismo negocio gravado por la ordenanza.*

2. Porque es contraria a la Ley núm. 85 de la Asamblea Legislativa de Puerto Rico, aprobada el 20 de agosto de 1925, y a las leyes enmendatorias de la misma, ya que el Gobierno Insular impone y cobra a la demandante una licencia sobre el negocio de venta de petróleo y sus derivados, resultando por lo tanto que la ordenanza impone una doble contribución, en violación de las disposiciones de la Sección 99 de la citada Ley 85 de agosto 20, 1925.

3. Porque es contraria a la Ley núm. 40 de abril 24, 1931, enmendada por la núm. 68 de mayo 13, 1934, que impone un arbitrio de siete centavos por galón de gasolina vendido en la Isla, resultando por lo tanto que la ordenanza impone una doble contribución al mismo negocio.

4. Porque deja a opción del Tesorero de la Capital la determinación de la persona obligada al pago del arbitrio.

La petición para un auto de *certiorari* alega que el Tesorero de la Capital ha exigido a la demandante el pago de los arbitrios impuestos por la ordenanza; que dicho funcionario ha instituído procedimientos criminales contra los empleados de la compañía, y que ha amenazado con embargar y vender en pública subasta la propiedad de la corporación para hacer efectivo el cobro del impuesto cuya legalidad se discute.

Alegando carecer de remedio legal adecuado e invocando la jurisdicción que la Sección 46 de la Ley núm. 99 de mayo 15, 1931, confiere a la Corte de Distrito de San Juan, para revisar o anular cualquier acto legislativo de la junta demandada, la corporación demandante solicitó un auto de *certiorari.* Se opuso la junta demandada, alegando la improcedencia del recurso de *certiorari* porque la demandante tiene un recurso legal adecuado, o sea el de pagar bajo protesta el arbitrio o contribución y solicitar su devolución en una acción ordinaria.

La corte de distrito declaró sin lugar la demanda y dictó sentencia desestimando la petición de *certiorari*, sin especial condenación de costas. Para revisar esa sentencia se ha interpuesto el presente recurso de apelación.

Señala la parte apelante como errores cometidos por el tribunal *a quo*, los siguientes:

1. Al sostener que el pago bajo protesta de los arbitrios impugnados, para reclamar su devolución mediante una acción ordinaria, es un remedio legal adecuado.

2. Al anular el auto expedido y sostener que la sección 32a de la Ley núm. 99 de 1931 priva a la peticionaria del remedio de *certiorari*, toda vez que la denegación de ese derecho a la demandante haría que la ley fuese inconstitucional.

3. Al negarse a declarar que los arbitrios impugnados son nulos, ilegales e inconstitucionales.

La cuestión pendiente ante nos, no envuelve en manera alguna la legalidad o ilegalidad de la ordenanza núm. 144 del Gobierno de la Capital. Solamente debemos considerar si la corte de distrito erró o si abusó de su discreción al decretar la improcedencia del auto de *certiorari*, al que recurrió la demandante como remedio para protegerse contra el cobro de un arbitrio que considera ilegal.

La demandante ha invocado como fundamento de su petición el artículo 46 de la Ley núm. 99 de 1931, que en lo pertinente dice así:

"Art. 46.—La Corte de Distrito de San Juan tendrá jurisdicción a instancia de parte perjudicada:

"(*a*) Para revisar o anular cualquier acto legislativo o administrativo de la Junta de Comisionados, de la Junta Administrativa o de cualquier funcionario de la Capital que lesione derechos constitucionales de los querellantes o sea contrario a la Ley Orgánica y a las leyes de Puerto Rico, mediante *certiorari*;" . . . .

Las disposiciones del citado artículo 46 de la Ley núm. 99 de 1931, que aparentemente conceden a un contribuyente el derecho a recurrir al *certiorari* como remedio en contra de la imposición y cobro de un arbitrio que él considera ilegal,

deben· ser consideradas e interpretadas en relación con lo dispuesto por el artículo 32 *a* de la misma Ley núm. 99 de 1931, que fué adicionado a dicha ley por la Ley núm. 32 de mayo 4 de 1933 (Leyes de 1932–33, pág. 255). Provee dicho artículo, que el contribuyente deberá en casos como el presente, pagar la contribución bajo protesta; y que podrá dentro de los treinta días siguientes al del pago demandar al Tesorero Municipal para obtener la devolución. Y añade lo siguiente:

". . . No se dará *ningún otro recurso* en caso de recaudación ilegal de rentas, contribuciones o arbitrios locales de la Capital, o en caso de tentativa para recaudar tales rentas, contribuciones o arbitrios locales. *En ningún caso se expedirá auto alguno* para impedir la recaudación de dichas rentas, contribuciones o arbitrios locales devengados o para obstaculizar o demorar esa recaudación;" . . . (Bastardillas nuestras.)

El recurso de *certiorari* es un remedio originario del derecho común inglés, que se ha hecho extensivo a nuestro derecho procesal insular por virtud de una ley aprobada por nuestra legislatura, en marzo 10 de 1904, la que está hoy incorporada a nuestro Código de Enjuiciamiento Civil como los artículos 670 a 674 de dicho cuerpo legal. Se expedía el auto de *certiorari* que hoy llamamos "certiorari clásico," para distinguirlo del llamado "estatutario," a nombre del Rey; e iba dirigido a los jueces o funcionarios de las cortes inferiores, ordenándoles elevar los autos de una causa pendiente ante ellos, con el fin de que el peticionario pudiese recibir más segura y más rápida justicia, administrada por el mismo Rey o por los jueces que él pudiese designar para conocer del caso. No se concedía el auto a menos que se tratase de revisar *funciones judiciales*. Y no podía utilizarse el *certiorari* del derecho común inglés, ni puede recurrirse al *certiorari* autorizado por nuestro Código de Enjuiciamiento Civil, para anular o revisar actos legislativos o administrativos de las diversas juntas y comisiones que constituyen la maquinaria de nuestros gobiernos, Insular y Municipal.

El recurso de *certiorari* en el caso de autos no puede prosperar, si no existe un estatuto que lo autorice expresamente.

En 31 de julio de 1919, la Legislatura de Puerto Rico aprobó la Ley núm. 85, denominada "Ley Municipal," cuya sección 65 proveyó por vez primera, que las cortes de distrito tendrían jurisdicción para anular o revisar cualquier acto legislativo o administrativo de las asambleas y concejos de administración municipales, mediante *certiorari*.

La Sección 46 de la ley que establece el Gobierno de la Capital (Ley 99 de 1931) es una reproducción exacta de la sección 65 de la Ley Municipal; y concede el recurso de *certiorari* para revisar o anular actos legislativos o administrativos de las juntas y funcionarios del Gobierno de la Capital, sin limitación alguna.

Es posible que durante la vigencia de dicha Sección 46 de la Ley del Gobierno de la Capital y con anterioridad a la aprobación de la sección 32 a, supra, que fué agregada a dicha ley por la Ley núm. 32 de mayo 4 de 1933, un contribuyente hubiese podido recurrir al *certiorari,* como un derecho indiscutible, para revisar y anular una ordenanza imponiendo arbitrios a su entender ilegales o injustos.

La ordenanza que se ataca por el presente recurso de *certiorari estatutario,* fué aprobada el día 6 de junio de 1933, o sea con posterioridad a la aprobación de la sección 32 a ya citada, que limita el alcance de la sección 46 de la Ley del Gobierno de la Capital y provee que el remedio del contribuyente es pagar la contribución bajo protesta y demandar al municipio en una acción ordinaria para que se le devuelva la suma pagada bajo protesta.

De lo expuesto parece evidente que la intención del legislador al aprobar la nueva sección 32 a, para adicionarla a la Ley del Gobierno de San Juan, fué la de no permitir el recurso de *certiorari* provisto por la sección 46 de dicha ley, en cuanto a aquellos casos en que se trata de la revisión o anulación de una ordenanza de naturaleza fiscal, que tenga

por objeto allegar recursos necesarios para la vida del Municipio, mediante la imposición y cobro de arbitrios.

Alega la ilustrada representación de la parte apelante, que ésta tiene un derecho indiscutible a la expedición de un auto de *certiorari,* por la razón de que el pago bajo protesta y la acción ordinaria para recobrar la cantidad así pagada no es un remedio legal adecuado, consistiendo la ineficacia del remedio en que la citada Sección 32 *a* no provee para el pago de intereses sobre la cantidad pagada bajo protesta, en el caso de que se ordenare su devolución; y además, en que la citada sección 32 *a* no contiene disposiciones mandatorias para el reintegro de los arbitrios que fueren recaudados ilegalmente, pues solamente provee que dichos arbitrios "deben ser reintegrados, dando preferencia a ese pago sobre cualquier otra reclamación que se haya hecho al Gobierno de la Capital."

Consideremos primeramente la cuestión levantada sobre la ineficacia del remedio provisto por la sección 32 *a* de la ley que rige al Gobierno de la Capital.

Aporta el apelante, como columna sostenedora de su contención de que el remedio legal que concede la sección 32 *a* es inadecuado y que por eso tiene derecho al recurso de *certiorari,* el caso de *Procter & Gamble Distributing Co.* v. *Sherman,* 2 F. (2d) 165. En ese caso, el demandante acudió ante la Corte de Distrito de los Estados Unidos en New York, como Corte de Equidad, en solicitud de un auto de *injunction,* que es un remedio de equidad, para prohibir a las autoridades de aquel estado que le cobrasen a la corporación demandante ciertas contribuciones. Se pidió por el demandado la desestimación de la demanda por insuficiencia de sus alegaciones. La corte sostuvo que la demanda era suficiente y que el demandante tenía derecho a recurrir a la jurisdicción de Equidad, porque en su opinión la ley del Estado de New York envuelta en el caso no ofrecía al demandante un remedio legal adecuado, por los motivos: (1) la

frase "may be refunded to such corporation," *podrá ser reintegrada a dicha corporación,* es ambigua y deja en duda si el contribuyente podría obligar a que se hiciese el reintegro, en caso de que las autoridades se negasen a hacerlo; y (*b*) porque el estatuto en cuestión rehusa expresamente conceder intereses sobre el importe reintegrado.

En el caso de *Southern California Telephone Co.* v. *Hopkins,* 13 F. (2d) 814, la demandante acudió también a una Corte de Equidad en solicitud de *injunction,* para impedir el embargo y la venta de aparatos telefónicos, con el fin de hacer efectiva una contribución local, que la demandante consideraba ilegal por ser una contribución doble, prohibida por las leyes de California. El demandado pidió la desestimación de la demanda de equidad, alegando que el demandante tenía un remedio legal adecuado, consistente en pagar la contribución y demandar para su devolución. La demandante replicó que el remedio legal que le concede el estatuto de California no es adecuado, porque obligaría a la demandante a incoar una multiplicidad de pleitos, y además, porque la demandante no podría recobrar intereses sobre la suma que le fuera reintegrada. La Corte de Distrito de California desestimó la demanda. Apelada la sentencia, la Corte de Circuito del Noveno Circuito, siguiendo el precedente establecido por el caso de *Procter & Gamble,* supra, revocó el fallo de la corte inferior y decretó el *injunction* solicitado, por entender que el remedio legal. que el estatuto de California ofrecía al demandante no era adecuado. Apelado el caso ante el Tribunal Supremo de los Estados Unidos, éste confirmó la sentencia y sostuvo que el remedio que daba el estatuto era inadecuado porque no disponía el pago de intereses sobre las cantidades pagadas bajo protesta, durante el tiempo necesario para obtener una sentencia; y que el remedio en equidad era permisible. Véase *Hopkins* v. *Southern Cal. Tel. Co.,* 275 U.S. 399–400.

Es doctrina legal firmemente establecida la de que cuando el remedio legal no es claro, y la equidad puede dar alivio al demandante, éste no está obligado a correr el riesgo de no obtenerlo dentro de un procedimiento legal ordinario. Véanse: *Davis* v. *Wakelee,* 156 U. S. 680; *Atlantic Coast Line* v. *Daughton,* 262 U. S. 413.

En el caso de *Atlantic Coast Line* v. *Daughton,* supra, se presentó demanda de *injunction* para impedir el cobro de una contribución sobre ingresos. El Estado presentó moción para desestimar la demanda por el fundamento de que el demandante tenía el remedio legal de pagar bajo protesta. La corte inferior declaró sin lugar la moción, consideró el caso en el fondo y desestimó la demanda. La Corte Suprema confirmó la sentencia, diciendo:

"Se alega por el Estado que la demanda fué correctamente desestimada por la Corte de Distrito, porque dentro de las leyes de North Carolina existe un remedio legal, sencillo, adecuado y completo por el cual un contribuyente puede recobrar el importe de una contribución ilegal pagada por él bajo protesta. Pero el estatuto en que se descansa principalmente es de reciente aprobación, que no parece haber sido interpretado y aplicado por la Corte más alta del Estado. A falta de esas decisiones, no podemos decir que el remedio legal sea sencillo y adecuado. (Citas.) Por ese motivo hemos considerado los méritos del caso."

De acuerdo con las autoridades que preceden, podría tal vez haberse invocado la jurisdicción extraordinaria de la Corte de Distrito de San Juan, como corte de equidad, en solicitud de un auto de *injunction,* para impedir el cobro de la contribución en el presente caso, alegando la ineficacia del remedio que a la demandante concede la sección 32 a de la Ley del Gobierno de la Capital. Pero ese remedio de equidad no podría prosperar si, aparte del remedio de pago bajo protesta, existiese otro remedio legal adecuado para conseguir la revisión y anulación de la ordenanza.

La dificultad del caso de autos estriba en que la demandante no ha acudido ante la corte de distrito en solicitud de

que ésta, como Corte de Equidad, le proteja, mediante un auto de *injunction*, contra la aplicación de una ordenanza que considera ilegal, sino que ha invocado la intervención de la corte, para que ésta le conceda un remedio legal estatutario, el *certiorari*, que la corte puede conceder o negar, a su discreción, pero sólo en aquellos casos taxativamente provistos por el estatuto.

En todos los casos que hemos citado, el demandante recurrió al *injunction*.

En el caso de *Birch* v. *Board of Supervisors,* 191 Cal. 235, el demandante solicitó un auto de *certiorari,* para revisar un acuerdo de la Junta de Supervisores, por el que se subió considerablemente la tasación de las propiedades del demandante. El demandado alegó que no procedía el *certiorari* porque el demandante tenía un remedio legal adecuado, cual era el de pagar bajo protesta y demandar para el reintegro la suma pagada. El demandante replicó que el remedio no es adecuado porque la ley no concede intereses sobre la cantidad ilegalmente cobrada. La corte dijo:

"El auto de *certiorari* es un auto *discrecional.* (Keys v. Marin County, 42 Cal. 252.) La corte inferior usó su discreción en favor de la expedición del auto y no abusó de la misma al concederlo."

La decisión en *Birch* v. *Board of Supervisors,* supra, parece sostener la contención de la apelante en el presente caso; pero la aparente fuerza de tal decisión se debilita, cuando encontramos que la Corte Suprema de California ha sostenido que los procedimientos ante la Junta de Igualamiento son por su naturaleza *judiciales* y como tales sujetos a revisión por las cortes. (*Los Angeles, etc. Co.* v. *County of Los Angeles,* 162 Cal. 164; *Huntley* v. *Board of Trustees,* 165 Cal. 298); y que el Código de aquel Estado concede facultad a las cortes para expedir autos de *certiorari,* cuando un tribunal inferior, junta, o funcionario, que ejerza *funciones judiciales,* se hubiere excedido en su jurisdicción, y no hubiere apelación, ni, en opinión de la corte, un remedio

sencillo, rápido y adecuado. (Cal. Code of Civ. Pr., Section 1068.)

Nuestra ley (secciones 670 a 674, Código de Enjuiciamiento Civil) no concede tan amplias facultades a nuestras cortes, las cuales sólo pueden revisar mediante autos de *certiorari* los procedimientos ante las cortes inferiores. Y es por eso que la apelante en el presente caso se ve obligada a invocar, como base de su derecho al auto de *certiorari,* la sección 46 de la Ley del Gobierno de la Capital, que es la que concede jurisdicción especial a la Corte de Distrito de San Juan para revisar o anular cualquier acto legislativo o administrativo de los organismos y funcionarios de la Capital, mediante *certiorari.*

La sección 32 *a* agregada a la Ley del Gobierno de la Capital por la Ley núm. 32 de 1933, establece una excepción a la regla general provista por la sección 46, para prohibir que se use el recurso de *certiorari* en cualquier caso en que el encargado de la recaudación de los arbitrios de la Capital *inicie cualquier procedimiento o lleve a cabo algunas diligencias para la recaudación de tales rentas, contribuciones o arbitrios.* La parte contra la que se lleve a efecto el procedimiento o la diligencia, si cree que el cobro es injusto o ilegal, deberá hacer el pago bajo protesta y proceder en la forma indicada en el estatuto.

La demanda interpuesta en el caso de autos alega como fundamento de la solicitud de *certiorari,* que el Tesorero de la Capital ha exigido el pago del arbitrio y ha realizado actos y diligencias tendientes a efectuar el cobro; y que la demandante no tiene recurso adecuado en el curso ordinario de la ley, para impedir el cobro del arbitrio.

No nos convencen los argumentos de la apelante para sostener su contención de que por no tener un remedio legal adecuado se ve obligada a recurrir al *certiorari* como el único remedio que puede protegerla contra el cobro del arbitrio sobre las bombas para expendio de gasolina.

La Corte Suprema de Tennessee, por sentencias que han sido confirmadas por el Tribunal Supremo de Estados Unidos, ha resuelto que el remedio de pago bajo protesta, de acuerdo con el estatuto de aquel estado, del que se originó el nuestro, es un remedio sencillo y eficaz, menos complicado que uno cualquiera de los remedios extraordinarios provistos por la ley. *City of Nashville* v. *Smith,* 86 Tennessee 213; *Louisville etc. Railroad Co.* v. *State,* 55 Tenn. 663, 804; *Tennessee* v. *Sneed,* 96 U. S. 69; *Shelton* v. *Platt,* 139 U. S. 591.

■ Pero, aun aceptando la insuficiencia del remedio que da la tantas veces citada sección 32 a, ¿sería eso bastante para autorizar la expedición de un auto de *certiorari,* en vista de la disposición expresa de dicha sección, que prohibe el uso de ese recurso cuando se trata de impedir el cobro de contribuciones o arbitrios municipales?

Nos inclinamos a opinar, que aun cuando el remedio legal de pago bajo protesta fuere considerado como insuficiente, eso no basta para que la demandante pueda recurrir al *certiorari,* pues la expedición del auto no es un derecho indiscutible, *writ of right,* sino un derecho puramente *estatutario* y sujeto a la sana discreción de la corte ante la cual se presenta la solicitud. Y ya hemos visto que lejos de conceder el recurso de *certiorari* en casos como el de autos, el estatuto expresamente lo prohibe.

No podemos convenir con la demandante en su alegación de que las leyes vigentes en Puerto Rico no le proporcionan otro remedio legal tan eficaz, tan rápido y tan completo como el *certiorari,* para obtener la sentencia que se trata de conseguir por medio del presente recurso.

La Legislatura de Puerto Rico aprobó en abril 25, 1931, la Ley núm. 47 intitulada "Ley Uniforme de Sentencias Declaratorias". (Leyes de 1931, pág. 379.) Dicha ley concede a las cortes de distrito autoridad para declarar derechos y otras relaciones jurídicas *aunque se inste o pueda instarse otro remedio;* y la declaración tendrá la eficacia y vigor de una sentencia definitiva (Sección 1).

Dispone la sección 2 de dicha ley, que toda persona cuyos derechos fuesen afectados por una ordenanza municipal podrá obtener la determinación de cualquier divergencia acerca de la interpretación o validez de dicha ordenanza y además que se dicte una declaración de los derechos que de dicha ordenanza puedan derivarse.

La sección 6 provee que la corte podrá negarse a dictar una sentencia declaratoria, si ésta no hubiera de poner fin a la controversia que originó el procedimiento. Y la sección 7 dispone que todas las sentencias declaratorias podrán ser revisadas al igual que cualesquiera otras sentencias. La sección 8 autoriza la concesión de remedios adicionales para hacer efectiva la sentencia declaratoria.

Dispone la sección 9 que en un procedimiento seguido al amparo de esta ley las cuestiones de hecho podrán ser consideradas y resueltas en igual forma en que se consideran y resuelven las cuestiones de hecho en otros pleitos civiles ante la corte que conozca el procedimiento.

La sección 11 dispone que en cualquier procedimiento en que se discuta la validez de una ordenanza municipal, el municipio correspondiente deberá ser incluído como parte, con derecho a ser oído, y si se tratare de la anticonstitucionalidad de una ordenanza, el Fiscal General, deberá también ser notificado, con derecho a ser oído.

Declara la sección 12 que la ley es por su naturaleza *una ley de remedios;* y que su propósito es autorizar la determinación de derechos y conceder remedios contra la inseguridad de tales derechos.

De lo expuesto se ve claramente que la demandante, que dice no tiene el propósito de impedir u obstaculizar el cobro del arbitrio y sí el de conseguir que se declare nula la ordenanza, por ser contraria a sus intereses, puede realizar su propósito con toda amplitud mediante un juicio declaratorio en el que puede considerarse y resolverse cualquier cuestión

de hecho en igual forma que si se tratara de un pleito civil ordinario.

El remedio que concede la ley sobre sentencias declaratorias es sencillo, adecuado y completo porque la ley concede a la corte facultad para conceder cualquier remedio adicional que fuere necesario para hacer efectiva la sentencia. Y seguramente la sentencia declaratoria puede obtenerse con tanta rapidez como en un proceso de *certiorari.*

La petición en el presente caso se ha basado exclusivamente en la alegada insuficiencia de los remedios legales que las leyes vigentes ofrecen al contribuyente para protegerse contra una exacción ilegal de un gobierno municipal. Y hemos visto, que aun admitiendo la insuficiencia del remedio del pago bajo protesta que da la sección 32 *a* de la Ley del Gobierno de la Capital, la contención de la apelante no ha sido sostenida, pues ésta tiene otros recursos legales tan eficaces como el *certiorari* para proteger sus derechos.

No pende ante nos la cuestión sobre si la demandante en este caso tendría o no derecho a un auto de *injunction,* para impedir el cobro del arbitrio sobre las bombas para expendio de gasolina; ni estamos tampoco obligados a emitir opinión sobre la legalidad o ilegalidad de la ordenanza.

En conclusión, opinamos que no procede la expedición del auto solicitado, por entender que las leyes vigentes conceden al contribuyente el amplio y adecuado remedio legal a que nos hemos referido en el curso de esta opinión, dentro del cual podría ser resuelta satisfactoriamente la controversia entre dos partes que evidentemente tienen intereses potencial y efectivamente opuestos. *Partido Unión Republicana* v. *Terry,* 49 D.P.R. 277; *Re Tampa Suburban R. Co.,* 168 U. S. 583. Además, estando en todo caso la concesión del *certiorari* sujeta a la discreción de la Corte de Distrito, no hemos encontrado en los autos nada que nos autorice a creer que el juez sentenciador abusara de su discreción.

*Debe confirmarse la sentencia apelada.*