PLAZA PROVISION COMPANY, INC., peticionaria y apelada, *v.* JESÚS BENÍTEZ CASTAÑO, como ADMINISTRADOR, y BOLÍVAR PAGÁN, como TESORERO, de LA CAPITAL DE PUERTO RICO, demandados y apelantes.

Núm. 7340.—*Sometido:* Abril 28, 1937. *Resuelto:* Mayo 28, 1937.

*J. Valldejuli Rodríguez,* abogado de los apelantes; *James R. Beverley, R. Castro Fernández, Ryder Patten* y *José López Baralt,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

La Junta de Comisionados de la Capital de Puerto Rico publicó en junio 6 de 1935, para empezar a regir el primero

de julio del mismo año, la Ordenanza núm. 252, cuya sección 6 dispone lo siguiente:

"INSPECCIÓN DE CARNE SACRIFICADA FUERA DE SAN JUAN.—Toda persona que se dedique a la venta en la Capital de Puerto Rico de carne fresca o refrigerada de animales sacrificados fuera de los límites del Gobierno de la Capital estará obligada a someter dicha carne diariamente a la inspección de los delegados del Administrador de la Capital y por dicha inspección pagará sobre la carne que sea aceptada para la venta, un derecho de 5 centavos por arroba, ya se trate de carne fresca o refrigerada."

La sección 8 de la misma ordenanza provee que los derechos de inspección que se imponen por la sección 6, supra, serán recaudados por el Tesorero de la Capital e ingresados en los fondos ordinarios del Gobierno de la Capital para proveer a los gastos ordinarios del mismo.

La peticionaria se dedica, entre otros, al negocio de importar de los Estados Unidos y vender en Puerto Rico carne refrigerada, sacrificada y preparada fuera de la Isla bajo la inspección y previa aprobación del Gobierno Federal.

Se alega en la petición, que desde julio 1°. a diciembre 31, 1935, la peticionaria importó varias partidas de carne refrigerada, las que fueron vendidas en el curso usual de sus negocios; que los agentes del Gobierno de la Capital visitaron regularmente durante ese tiempo el establecimiento de la peticionaria y exigieron el pago de los arbitrios impuestos sobre dichas partidas de carne, negándose la peticionaria a pagarlos; que los agentes nunca inspeccionaron la carne, ni intentaron hacer una inspección; que el 6 de abril de 1936 el Tesorero demandado requirió a la peticionaria para el pago de $306.30 por concepto de arbitrios sobre las partidas de carne importadas desde julio 1°. a diciembre 31 de 1935, con apercibimiento de que si dicha suma no era pagada dentro de 10 días procedería a embargar y vender en pública subasta propiedades de la peticionaria, para hacer efectiva dicha cantidad, de acuerdo con lo previsto por la Ley núm. 63 de mayo 13 de 1934 (pág. 447).

Solicitó la peticionaria que se dictase un *injunction* permanente prohibiendo a los demandados realizar acto alguno tendiente al cobro de los tributos; y además, que se expidiese una orden de *injunction pendente lite* para impedir la realización de tales actos. Y como fundamentos legales de su petición alegó:

1. Que la Ordenanza núm. 252 es ilegal y nula e infringe los derechos garantidos a la peticionaria por la Constitución Federal, la Ley Orgánica y las leyes de Puerto Rico:

(*a*) Porque la Resolución Conjunta núm. 66 de mayo 12 de 1931 prohibe la imposición de tales arbitrios sobre la carne sacrificada en Puerto Rico; y su imposición sobre la carne importada de Estados Unidos viola la Sección 3 de la Carta Orgánica que prohibe la imposición de contribuciones discriminatorias contra artículos importados de Estados Unidos.

(*b* y *c*) Porque la Sección 6 de la ordenanza niega a la peticionaria la igual protección de las leyes; viola la uniformidad de la tasación al no imponer iguales arbitrios a la carne sacrificada dentro de la Capital, en contravención de la Sección 2 de la Carta Orgánica; constituye un discrimen prohibido por la Sección 3 de la misma Carta Orgánica; y trata de regular y gravar el comercio entre Estados Unidos y Puerto Rico, que es una facultad exclusiva del Congreso Nacional.

(*d*) Porque las disposiciones de la ordenanza están en conflicto con las de la ley federal titulada Federal Meat Inspection Act, aprobada en marzo 4, 1907 (21 U. S. C. A. 71–91).

(*e*) Porque la Capital de Puerto Rico carece de facultad y autoridad para imponer arbitrios de inspección, a diferencia de arbitrios para obtener rentas.

(*f*) Porque el referido arbitrio es en efecto una doble contribución, por la razón de que la Capital impone y cobra un derecho de patente para la venta de carne, de acuerdo con la Ley núm. 99 de mayo 15 de 1931, que ha sido pagado por la peticionaria.

(*g*) Porque la imposición del arbitrio viola la Sección 99 de la Ley de Rentas Internas de Puerto Rico que dispone que los municipios no podrán imponer arbitrios o contribuciones locales sobre cualquier artículo sujeto a imposición o *eximido de imposición* por dicha ley; y la sección 83 de la misma ley que

provee que los comestibles están exentos de contribuciones de Rentas Internas.

(*h*) Porque la Ley núm. 63 de abril 28, 1931, y el Reglamento para su aplicación dictado por la Junta Insular de Sanidad; la Ley núm. 81 de marzo 14, 1912, enmendada por la Ley núm. 25 de 1914; y la ley de marzo 14 de 1907, prohiben e impiden legislación similar por la Capital sobre inspección de la carne.

2. Que la peticionaria carece de remedio adecuado en ley; y que si se permite el embargo y venta de los bienes de la peticionaria, ésta será privada de su propiedad sin el debido proceso de ley, se le causarán daños irreparables y se le expondrá a una multiplicidad de pleitos para hacer valer sus derechos.

3. Que el pago bajo protesta de los arbitrios no constituye un remedio adecuado, rápido y eficaz, por los siguientes motivos:

(1) Porque la ley que provee el pago bajo protesta (Ley núm. 99 de 1931, enmendada por Ley núm. 32, 1933) no dispone el pago de intereses sobre las sumas cobradas indebidamente al ordenarse su devolución.

(2) Porque dicha ley sólo concede al contribuyente un derecho preferente y no un derecho absoluto a la inmediata devolución del importe pagado bajo protesta.

(3) Porque el remedio de pago bajo protesta obligaría a la peticionaria a incoar una multiplicidad de pleitos.

(4) Porque la ley no dispone que los arbitrios pagados bajo protesta sean ingresados en un "trust fund," fideicomiso, y permite por el contrario que sean utilizados para los gastos ordinarios del Municipio, haciendo incierto e inseguro el pronto reintegro de los arbitrios declarados ilegales.

(5) Porque de acuerdo con la ley que autoriza el pago bajo protesta, la devolución de los arbitrios no podría ser ordenada mediante auto de *mandamus*.

4. Porque el estado de las finanzas del Gobierno de la Capital es de tal modo embarazoso, que equivale a un estado de insolvencia, no estando en posición dicho Gobierno de pagar, ni está pagando, sus cuentas corrientes a su vencimiento, motivo por el cual la peticionaria no podría recobrar los arbitrios que dicho Gobierno trata de cobrarle.

Citados para mostrar causas o razones por las cuales no debiera dictarse el *injunction* solicitado, comparecieron los

demandados y formularon excepciones previas y solicitaron la disolución del entredicho y la desestimación de la petición, por los fundamentos siguientes:

1. Falta de jurisdicción para dictar el entredicho, porque se trata de impedir el cobro de un arbitrio impuesto mediante ordenanza y la peticionaria tiene un recurso legal amplio, claro y eficaz, o sea el pago bajo protesta provisto por la Ley 99 de 1931, enmendada por la Ley 32 de 4 de mayo de 1933 y por la Ley 63 de mayo 13 de 1934. Dichas leyes prohiben expresamente el uso y expedición de autos extraordinarios para impedir el cobro de arbitrios.
2. Insuficiencia de los hechos alegados en la petición para constituir causa de acción.
3. Que no procede el *injunction* por la mera alegación de que la ordenanza sea inconstitucional.

La corte de distrito, después de oír a las partes, dictó el auto de *injunction* preliminar solicitado. Los demandados apelaron y en su alegato señalan como error de la corte el haber dictado un auto que hace ineficaz la Ley núm. 99 de 1931 y sus enmiendas, y que está en conflicto con la decisión dictada por este Tribunal Supremo en el caso de *The Texas Company (P. R) Inc.* v. *La Junta de Comisionados de San Juan,* 49 D.P.R. 934.

La única cuestión que se presenta ante nos por el presente recurso es la de si los hechos alegados en la solicitud y admitidos por la excepción previa son suficientes para justificar la intervención de la corte de distrito mediante la expedición de un auto de *injunction pendente lite.*

 Convenimos con el apelante en que la mera alegación de que una ley u ordenanza es inconstitucional no es por sí solo suficiente para que una corte de equidad pueda paralizar su ejecución mediante una orden de *injunction.* Deben existir otras razones y fundamentos que justifiquen tal intervención, tales como la falta de un remedio legal adecuado, los daños irreparables que habría de sufrir el demandante o la multiplicidad de pleitos en que éste se vería envuelto si se denegare la expedición del auto.

■ En el presente caso se ha alegado específicamente por la peticionaria, que carece de otro remedio legal adecuado para la protección de sus intereses contra los actos que los demandados se proponen realizar para efectuar el cobro del arbitrio.

En el caso de *The Texas Company (P. R.) Inc.* v. *La Junta de Comisionados de San Juan,* supra, invocado por los apelantes, la corporación peticionaria solicitó un auto de *certiorari* dirigido contra la Junta de Comisionados de San Juan y pidió se dictase sentencia declarando que cierta ordenanza aprobada por dicha junta era ilegal y nula. Se alegó en la petición que la peticionaria carecía de remedio legal adecuado, pero no se solicitó de la corte que hiciera uso de sus facultades extraordinarias como tribunal de equidad, para impedir, mediante *injunction,* la realización de los actos que la parte demandada se proponía realizar al amparo de la ordenanza de cuya validez se trataba. Negóse la Corte de Distrito a expedir el auto de *certiorari.* Y apelado el caso para ante esta Corte Suprema, resolvimos que la corte inferior había procedido correctamente al negarse a expedir el auto de *certiorari,* que es un remedio extraordinario originario del derecho común inglés, primero, porque de acuerdo con el artículo 32 (*a*) de la Ley núm. 99 de 1931, no procede la expedición de tales autos cuando su objeto es impedir u obstaculizar la recaudación de arbitrios; y segundo, porque la peticionaria tenía un recurso legal adecuado, cual era el provisto por la ''Ley Uniforme de Sentencias Declaratorias'' (Leyes de 1931, pág. 379), dentro del cual podía conseguir una sentencia declaratoria de sus derechos tan eficaz como la que pudiera dictarse en el procedimiento de *certiorari.* No se discutió ni se resolvió en el citado caso si la peticionaria tenía o no derecho a la expedición de un auto de *injunction.*

En el caso de autos se ha invocado expresamente la jurisdicción de equidad alegándose, entre otros fundamentos, que el recurso legal de pago bajo protesta es inadecuado.

El artículo 32 (*a*) de la Ley núm. 99 de 1931, adicionado a dicha Ley por la núm. 32 de mayo 4 de 1933 (Leyes de 1932-33, pág. 255) dispone:

"Artículo 32(*a*).—En todo caso en que el Tesorero o cualquiera de sus subalternos encargados de la recaudación de las rentas, contribuciones o arbitrios locales que se adeuden al Gobierno de la Capital, inicie cualquier procedimiento o lleve a cabo algunas diligencias para la recaudación de tales rentas, contribuciones o arbitrios locales que se adeuden al Gobierno de la Capital, bajo la alegación o reclamación hecha por dicho funcionario o sus empleados mencionados de que le adeude alguna persona, la parte contra la que se lleve a efecto el procedimiento o la diligencia, si cree que el cobro es ilegal o injusto, o que se hace contra las disposiciones de la Ley Orgánica, leyes insulares u ordenanzas de la Capital, pagará dichas rentas, contribuciones o arbitrios locales bajo protesta. Después que se haya hecho ese pago bajo protesta, el Tesorero o recaudador ingresará la cantidad recaudada en el Tesoro de la Capital, haciéndose constar que dicha cantidad se ha pagado bajo protesta. La parte que pague esa renta, contribución o arbitrio local bajo protesta, podrá en cualquier momento dentro del plazo improrrogable de treinta días después de haber hecho el pago, demandar al mencionado Tesorero ante la corte de jurisdicción competente para ello para obtener la devolución de la citada suma; y si se decidiere, teniendo en cuenta los méritos del caso, que la cantidad fué recaudada injusta e ilegalmente, el tribunal que conozca del asunto podrá certificar, de acuerdo con la constancia del mismo, que las rentas, contribuciones o arbitrios locales de referencia fueron pagados sin existir razones para ello, y deben ser reintegrados, dando preferencia a ese pago sobre cualquier otra reclamación que se haya hecho al Gobierno de la Capital. No se dará ningún otro recurso en caso de recaudación ilegal de rentas, contribuciones o arbitrios locales de la Capital, o en caso de tentativa para recaudar tales rentas, contribuciones o arbitrios locales. En ningún caso se expedirá auto alguno para impedir la recaudación de dichas rentas, contribuciones o arbitrios locales devengados o para obstaculizar o demorar esa recaudación; . . ."

Se observará que el estatuto transcrito no contiene disposición alguna en cuanto al pago de intereses sobre la cantidad que haya de reintegrarse al peticionario, en caso de que la ordenanza fuere declarada nula, ni asegura o garantiza

en manera alguna la devolución del importe de la sentencia. Examinaremos la jurisprudencia sobre la materia.

En *Procter & Gamble. Distributing Co.* v. *Sherman,* 2 F (2d) 165, se solicitó un *injunction* para impedir- el cobro de contribuciones ilegalmente impuestas. Se opuso el demandado alegando que el peticionario tenía un remedio legal adecuado, el de pago bajo protesta, que le concedía la Sección 218 de "New York Tax Law'". La corte, al sostener que el pago bajo protesta no era un remedio legal adecuado, se expresó así:

"El remedio es inadecuado por causa de la expresa negativa a conceder intereses. No es contestación el decir que no pueden concederse intereses en contra del poder soberano (citas). La suficiencia de un remedio legal no puede medirse por los remedios que uno pueda tener contra una persona que está exenta de todos los procesos. Si ése fuera el criterio aplicable, la misma suma principal podría ser confiscada. Aun cuando no se ha llamado mi atención hacia decisión alguna sobre la materia, me parece claro que no es un remedio legal adecuado, después de quitar a una persona su dinero como condición para permitirle que discuta la validez de la contribución, el de simplemente devolvérselo, cuando, no importa cuánto tiempo después, establezca que nunca debió habérsele requerido para hacer tal pago. No importa cuáles hayan podido ser nuestras ideas arcaicas en cuanto al interés, en las comunidades financieras modernas un dólar hoy vale más que un dólar el año que viene, e ignorar ese intervalo como si no tuviera importancia es contradecir ideas muy arraigadas en cuanto al valor. El uso presente de mi dinero es una cosa de valor, y, si no se me otorga compensación por su pérdida, el remedio no subsana por completo la injusticia."

La misma cuestión legal fué resuelta en igual sentido por la Corte de Circuito de Apelaciones en el caso de *Southern California Telephone Co.* v. *Hopkins,* 13 F(2d) 814, decisión que fué confirmada por la Corte Suprema Federal (275 U. S. 399) resolviendo, de acuerdo con la doctrina de *Procter & Gamble etc.* v. *Sherman,* supra, que cuando el remedio legal concedido por la ley estadual al contribuyente que se ve obligado a pagar bajo protesta una contribución ilegal, no dispone el pago de intereses sobre la suma pagada, al decre-

tarse su reintegro, el remedio legal no es adecuado y el contribuyente puede invocar la jurisdicción de equidad para que se le proteja contra las exacciones ilegales.

De acuerdo con las decisiones arriba citadas, debemos resolver que el remedio de pago bajo protesta provisto por la sección 32 (a) de la Ley núm. 99 de 1931, supra, no es un remedio legal adecuado y seguro para la protección de los contribuyentes.

Las alegaciones de la petición presentan un caso que prima facie justifica la intervención de la corte de equidad. No erró la corte inferior al declarar sin lugar la excepción previa de falta de acción ni al decretar el *injunction pendente lite.*

*Debe confirmarse la resolución recurrida.*

Por las razones expuestas en la opinión y quizás por otras, el Juez Asociado Señor Wolf concurre con esta sentencia.*

El Juez Asociado Señor Córdova Dávila no intervino.